[No. 75637-6. En Banc.]
Argued May 17, 2005. Decided November 10, 2005.

THE STATE OF WASHINGTON, *Petitioner,* v. ROBERTA JEAN ELMORE, *Respondent.*

---

*Gerald A. Horne, Prosecuting Attorney,* and *John C. Hillman, Deputy,* for petitioner.

*Eric Broman* (of *Nielsen, Broman & Associates, P.L.L.C.*), for respondent.

¶1 BRIDGE, J. — Roberta Elmore appeals her convictions for first degree felony murder, first degree burglary, first degree kidnapping, second degree assault, and conspiracy

to commit robbery in the second degree, all of which were based on her complicity in the invasion of the home of a severely disabled man and the shooting death of one of his caregivers. Elmore contends that her rights to an impartial jury, a unanimous jury verdict, and due process under the federal and state constitutions were violated when the trial judge dismissed a deliberating juror after other jurors accused him of refusing to convict under any view of the facts and refusing to follow the law.

¶2 We recognize that in the rare case where a deliberating juror is accused of attempting jury nullification,[1] the trial judge is faced with a "delicate and complex task," in that he or she must adequately investigate the allegations, but also must take care to respect the principle of jury secrecy. *United States v. Thomas*, 116 F.3d 606, 618 (2d Cir. 1997). We hold that in analyzing the evidence obtained from investigation, the trial judge must apply a heightened evidentiary standard: a deliberating juror must not be dismissed where there is any reasonable possibility that the impetus for dismissal is the juror's views of the sufficiency of the evidence. However, once the trial court has applied the correct standard, the court's conclusion as to whether the juror should be dismissed is reviewable only for abuse of discretion. Here, the trial court based its decision to dismiss the deliberating juror on very limited evidence, and there is no indication that it applied a heightened evidentiary standard in making the dismissal decision. We affirm the Court of Appeals and remand to the superior court for a new trial.

## I

## Facts and Procedural History

¶3 In December 1996, Roberta Elmore was hired by an escort service. Elmore went on her first call to the home of

---

[1] Nullification is a juror's "knowing and deliberate rejection of the evidence or refusal to apply the law . . . because the result dictated by law is contrary to the [juror's] sense of justice, morality, or fairness." BLACK'S LAW DICTIONARY 875 (8th ed. 2004).

Dennis Robertson, a quadriplegic man who shared his home with two other disabled gentlemen. But after a misunderstanding as to what was expected of her, Elmore left Robertson's home and the escort service forced Elmore to return Robertson's payment and fired her. Elmore expressed anger to various friends about the incident and reportedly enlisted Gordon Crockett and Thorsten Jerde to rob the Robertson residence, giving them details about the location of the safe she had seen in the bedroom and showing them where Robertson lived. In addition, Elmore reportedly gave Crockett and Jerde bullets for the gun that they planned to use during the robbery.

¶4 In the early morning hours of December 11, 1996, Crockett and Jerde enlisted two others to help with the robbery. After gaining entry to the house on a ruse, Crockett and Jerde entered Robertson's bedroom and Crockett ordered Scott Claycamp, Robertson's caregiver, to the floor. Jerde grabbed the safe and left the room. Crockett shot Claycamp in the back of the head and Claycamp died later that day.

¶5 All of the participants, including Elmore, initially pleaded guilty to first degree felony murder, *State v. Jerde,* 93 Wn. App. 774, 776, 970 P.2d 781 (1999), but the Court of Appeals reversed and remanded for Elmore to elect either to withdraw her guilty plea or to enforce the plea agreement before a different judge. Elmore elected to withdraw her guilty plea, and the State proceeded to trial on charges of first degree felony murder, first degree burglary, first degree kidnapping, second degree assault, and conspiracy to commit murder in the first degree. Jerde and another participant testified at Elmore's trial, but Crockett did not. Elmore took the stand and admitted that she had asked Crockett to collect the money she believed Robertson owed her and that she showed Crockett and Jerde where Robertson lived. However, she asserted that her husband had given bullets to Crockett and Jerde, and she denied encouraging the men to rob Robertson or hurt anyone in the house.

¶6 The jury began deliberations on the morning of October 10, 2001. On the morning of October 12, the court received notes from two individual jurors claiming that Juror 8 was refusing to follow the instructions:

Jurrer [sic] #8

I don't care what law says

Will not lissen [sic] to deliberation

Is

Nuts

Criminal

Related

or all of the above

From #12

Ex. 128.

Your Honor:

As the presiding juror, I feel compelled to ask your assistance. We have a juror on the panel who has made statements which lead me to believe he was predisposed to <u>not</u> follow the instructions given by you or to follow the law contained in those instruction [sic].

Prior to adjourning on Thursday, this juror said "I don't care what the judge said. The law is shit and I won't convict anyone based on what the law says."

*This juror has disregarded every witness statement regarding the defendant as credible.*

Ex. 129 (emphasis added). The trial judge discussed the notes with counsel and then questioned the presiding juror, verifying that the second note was accurate and that it referred to Juror 8. The court then questioned Juror 12 about the first note and clarified that the top line, "I don't care what [the] law says," was a quote from Juror 8. Ex. 128. When Juror 12 tried to explain the circumstances of the statement, the judge cut him off, apparently being careful not to delve into the details of deliberations.

¶7 The trial judge then heard argument from counsel as to whether the information provided was sufficient to re-

move Juror 8 and replace him with an alternate pursuant to RCW 2.36.110 (making it the duty of the trial judge to excuse any juror who, in the opinion of the trial judge, has manifested unfitness by reason of bias or prejudice) and Criminal Rule (CrR) 6.5 (allowing replacement of a deliberating juror with an alternate but requiring the jury to begin deliberations anew). The prosecutor argued that the notes and testimony from the two complaining jurors were sufficient to support removal of Juror 8, even without testimony from Juror 8 himself. Defense counsel argued that the notes were insufficient to support either questioning Juror 8 or discharging him.

¶8 Without questioning Juror 8, the trial court concluded that the notes and testimony were sufficient by themselves to show that Juror 8 was refusing to follow the law and refusing to deliberate. The trial judge was reluctant to inquire of Juror 8, presumably because doing so could delve into his mental processes as a juror or prejudice him against the State. Even though the note from Juror 5 also commented as to witness credibility, the trial court determined that this fact did not overcome Juror 8's reported refusal to follow the law. Thus, based only on the notes and testimony from the complaining jurors, the trial judge found that under RCW 2.36.110 she "must excuse him as being unfit for jury duty." Report of Proceedings (RP) at 1174.

¶9 Defense counsel objected, emphasizing the trial judge's failure to interview Juror 8. The prosecutor agreed and encouraged the judge to interview Juror 8 for the purpose of supplementing the record with a determination as to the credibility of each testifying juror. The trial judge indicated that she did not believe an interview was necessary because the statements from the other jurors were sufficient to support the dismissal, and she expressed concern that even if Juror 8 denied making the comments, he could not continue to deliberate and a mistrial might be required. Eventually, the trial judge reiterated that her decision was final but agreed to question Juror 8 to supplement the record.

¶10 Upon questioning by the trial judge, Juror 8 denied stating that the law was "shit" and denied refusing to follow the law or convict, no matter what the law said. RP at 1182-83. He explained that the comment occurred during a discussion of "whether evidence was credible or not and whether a witness was credible":

> I did not say it that way.
>
> I said that it does not matter what this paper says, it matters if we believe—on what the witnesses have to say, if we believe the witnesses are credible. If we believe the witnesses are credible, then we vote one way. But if we do not believe what the witnesses say, then we are obligated to vote the other way. And what's in the thing doesn't mandate how we have to vote. It's what we believe the testimony—you know, is the testimony credible?

RP at 1183. After Juror 8's testimony, the prosecutor asked the trial court to either make a determination as to the relative credibility of the jurors or to question more jurors about their perceptions of Juror 8's comments. Defense counsel asked the trial judge to reconsider her decision to dismiss Juror 8 or, in the alternative, to grant a mistrial. The trial judge concluded that

> Juror No. 8 denies that he said it the way the presiding juror and Juror No. 12 had written it. And then he proceeded to tell us further that it does not matter what this paper says, it matters whether we believe what the witnesses have to say, if we believe the witnesses are credible. And I believe that his own statements are sufficient to show that he has manifested unfitness by reason of bias or prejudice with respect to the instructions on the law as a whole in this matter.
>
> So for that reason, I will be denying the request to bring out further jurors and also to reconsider my decision in this case.

RP at 1185-86. The trial judge also denied the motion for mistrial. She then entered a written order disqualifying Juror 8, finding that he had at times refused to participate in deliberations, and he refused to follow the law as instructed. She also found that Jurors 5 and 12 were credible. Finally, the trial court expressly found that "Juror

#8 is not disqualified because of any valid disagreement he may have had with other jurors, including disagreements regarding the credibility of witnesses." Clerk's Papers (CP) at 65. Rather, in an order resulting from posttrial motions, the trial court made an additional finding that Juror 8 was not credible.

¶11 Juror 8 was replaced by an alternate juror and deliberations began anew. The reconstituted jury found Elmore guilty of first degree felony murder, first degree burglary, first degree kidnapping, second degree assault, and criminal conspiracy to commit robbery in the second degree. A posttrial defense motion for a new trial based on Juror 8's dismissal was denied after briefing from both sides.

¶12 Elmore appealed, arguing that the trial court erred by dismissing Juror 8 where there was evidence that he simply disagreed with the other jurors as to the credibility of witnesses and the merits of the case. *State v. Elmore,* 121 Wn. App. 747, 752, 90 P.3d 1110 (2004). Elmore asserted that because the notes from Jurors 5 and 12 were ambiguous as to the source of conflict with Juror 8, the trial court erred by further inquiring into the allegations. *Id.*

¶13 Because there is no binding Washington case law on this question, the Court of Appeals considered cases from other jurisdictions. *See id.* at 752-55. The Court of Appeals applied a de novo standard of review, explaining the case involved a question of manifest constitutional error. *Id.* at 757. The court also held that where the record shows "any reasonable possibility" that the request for the juror's dismissal stems from his views of the merits of the case, then dismissal of that juror would violate the defendant's right to a fair and impartial jury. *Id.* at 756. The Court of Appeals ultimately concluded both that there was a reasonable possibility that the conflict among the jurors arose out of Juror 8's views of the merits of the case and that the trial judge improperly intruded into jury deliberations "[b]y finding that the foreperson and juror 12 were credible and juror 8 was not . . . becoming in essence a thirteenth and presiding juror to rule on what the jurors said during

deliberation." *Id.* at 757.[2] Thus, the Court of Appeals reversed and remanded to the superior court for a new trial. *Id.* at 749.

¶14 The State filed a petition for review, which this court granted. *State v. Elmore*, noted at 153 Wn.2d 1008, 111 P.3d 856 (2005). We affirm the Court of Appeals.

## II

## Analysis

■ ¶15 In Washington, the dismissal of an unfit juror is governed by statute:

> It shall be the duty of a judge to excuse from further jury service any juror, who in the opinion of the judge, has manifested unfitness as a juror by reason of bias, prejudice, indifference, inattention or any physical or mental defect or by reason of conduct or practices incompatible with proper and efficient jury service.

RCW 2.36.110. While the statute governs what justifies dismissal of a juror for unfitness, CrR 6.5 outlines the specific procedure for such a dismissal in a criminal case. The rule provides that after deliberation has begun, alternate jurors may be recalled at any time that a regular juror is unable to serve. CrR 6.5. "If the jury has commenced deliberations prior to replacement of an initial juror with an alternate juror, the jury shall be instructed to disregard all previous deliberations and begin deliberations anew." *Id.*

¶16 *Standard of Review:* The parties dispute the standard of review that an appellate court must apply when reviewing a trial court's dismissal of a deliberating juror for unfitness under RCW 2.36.110. The Court of Appeals concluded that because Elmore's appeal implicates her constitutional rights to a fair and impartial jury, appellate review should be de novo. *Elmore,* 121 Wn. App. at 757. However,

---

[2] Relying on *Elmore,* another panel of Division Two of the Court of Appeals recently reached the same conclusion in a similar case. *See State v. Johnson,* 125 Wn. App. 443, 459, 105 P.3d 85 (2005).

the State asserts that whether a juror should be dismissed for unfitness is a question that, by statute, rests within the discretion of the trial court and can be reviewed only for abuse of that discretion. *See* RCW 2.36.110.

¶17 Before we can decide whether the trial court in this case properly dismissed Juror 8, we must first determine the proper evidentiary standard that trial courts must apply when considering whether a juror is unfit to continue deliberating. The question of the appropriate standard of proof is a question of law, and our determination on review is de novo. *See, e.g., In re Det. of Petersen,* 145 Wn.2d 789, 807-08, 42 P.3d 952 (2002) (Ireland, J., dissenting) (characterizing the question of the proper standard of proof as a question of law, subject to de novo review, and noting that the majority had analyzed the question de novo); *see also Labriola v. Pollard Group, Inc.,* 152 Wn.2d 828, 832, 100 P.3d 791 (2004) (questions of law reviewed de novo); *Rozner v. City of Bellevue,* 56 Wn. App 525, 536, 784 P.2d 537 (1990) ("The choice of standard [of proof] is an issue of law."), *rev'd on other grounds,* 116 Wn.2d 342, 804 P.2d 24 (1991); *In re D.T.,* 212 Ill. 2d 347, 818 N.E.2d 1214, 1220, 289 Ill. Dec. 11 (2004) (issue of proper standard of proof is a question of law subject to de novo review); *Boccanfuso v. Conner,* 89 Conn. App. 260, 873 A.2d 208, 224 (2005) (same).

¶18 Even so, RCW 2.36.110 states that the trial court may dismiss a juror *"who in the opinion of the judge"* has manifested unfitness as a juror. (Emphasis added.) Thus, the plain language of the statute suggests that once the proper standard of proof is applied, the determination of whether or not to dismiss a juror ought to be at the discretion of the trial judge. Washington courts, as well as the great majority of other courts reviewing juror dismissal, have applied an abuse of discretion standard and found that so long as the trial court has applied the proper legal

standard of proof to the evidence, the trial court's decision deserves deference.[3]

¶19 *Special Considerations:* Generally, questions of juror bias or incompetence focus on " 'some event, or . . . relationship between a juror and a party, that is both easily identifiable and subject to investigation and findings without intrusion into the deliberative process.' " *United States v. Symington,* 195 F.3d 1080, 1087 n.6 (9th Cir. 1999) (quoting *Thomas,* 116 F.3d at 621); *see also United States v.*

[3] *See State v. Jorden,* 103 Wn. App. 221, 226, 11 P.3d 866 (2000) (reviewing a trial court's decision, before deliberations, to dismiss a juror for inattentiveness); *State v. Johnson,* 90 Wn. App. 54, 73, 950 P.2d 981 (1998) (reviewing the replacement of a deliberating juror who asked to be excused because she was so overwhelmingly shy that she could not deliberate fairly); *State v. Ashcraft,* 71 Wn. App. 444, 461, 463, 859 P.2d 60 (1993) (reviewing the replacement of a deliberating juror after a snowstorm delayed deliberations for several days and the juror had plans for an overseas vacation). Many federal circuit courts have also applied an abuse of discretion standard when evaluating a district court's dismissal of a deliberating juror. *See, e.g., United States v. Peterson,* 385 F.3d 127, 134 (2d Cir. 2004) ("[T]he trial judge is in a unique position to ascertain an appropriate remedy, having the privilege of 'continuous observation of the jury in court' " (quoting *United States v. Panebianco,* 543 F.2d 447, 457 (2d Cir. 1976))); *United States v. Edwards,* 303 F.3d 606, 631 (5th Cir. 2002); *United States v. Abbell,* 271 F.3d 1286, 1302 (11th Cir. 2001). Even in cases involving the special problem of attempted jury nullification, courts have acknowledged that the proper standard of review is abuse of discretion. *See, e.g., Abbell,* 271 F.3d at 1302; *United States v. Symington,* 195 F.3d 1080, 1085 (9th Cir. 1999); *Perez v. Marshall,* 119 F.3d 1422, 1426 (9th Cir. 1997) ("On direct review, a district court's decision to excuse a juror for just cause is reviewed for abuse of discretion."); *Thomas,* 116 F.3d at 612; *People v. Cleveland,* 25 Cal. 4th 466, 21 P.3d 1225, 1230, 106 Cal. Rptr. 2d 313 (2001). *But see People v. Gallano,* 354 Ill. App. 3d 941, 821 N.E.2d 1214, 1223, 290 Ill. Dec. 640 (2004) (applying a de novo standard). The trial court is simply in the best position to evaluate the jurors' candor and their ability to deliberate. *Symington,* 195 F.3d at 1085; *see also United States v. Cox,* 324 F.3d 77, 87 (2d Cir. 2003).

Federal Rule of Criminal Procedure Rule 23(b) provides that a district court can excuse a juror for just cause after the jury has retired to consider its verdict. If the court does so, it may, in its discretion, allow a verdict by the remaining 11 jurors. FED. R. CRIM. P. 23(b)(3). The State argues that this ability to proceed with only 11 jurors distinguishes all federal cases, and they should not be relied upon as persuasive authority. However, none of the federal courts cited herein express this 11 juror option as a basis for its decision. In addition, in at least one case, the trial court *did* substitute an alternate. *Symington,* 195 F.3d at 1084; *see also* FED. R. CRIM. P. 24(c)(3).

The *Perez* court also noted that whether a trial court violated a defendant's Sixth Amendment right to a jury trial by excusing a juror for good cause and replacing that juror with an alternate is a question of law subject to de novo review, a statement on which the Court of Appeals in this case relied in adopting its de novo standard. *Perez,* 119 F.3d at 1426; *Elmore,* 121 Wn. App. at 757-58. The *Perez* court does not explain how these seemingly conflicting articulations of the standard of review can be reconciled.

*Edwards,* 303 F.3d 606, 632-33 (5th Cir. 2002). For example, accusations that a deliberating juror has discussed or considered extrinsic evidence, *Edwards,* 303 F.3d at 630, that the deliberating juror was dishonest during voir dire, *Sanders v. Lamarque,* 357 F.3d 943, 946-47 (9th Cir. 2004), or that the juror is biased because she knows the defendants, *United States v. Peterson,* 385 F.3d 127, 133-34 (2d Cir. 2004), all can be investigated without direct discussion of the juror's views about the merits of the case. But accusations that a juror intends to engage in nullification "go to the quality and coherence of the juror's views on the merits." *Symington,* 195 F.3d at 1087 n.6. Such a case is relatively rare, but it presents special problems, in part because the line between a refusal to follow the law and a decision based on the juror's perception of the facts is often a fine one:

> In eighteenth-century America, the transplanted jury took root and flourished as never before. Lay citizens' common sense was exalted over the specialized knowledge of judges and lawyers; jury independence became an article of faith. The jury gained, and then held for more than a century, the right to decide what the law was, even if the judge thought differently. In criminal cases the jury's right to acquit on grounds of conscience became firm. Although these two threads of jury power are often tangled under the label "jury nullification," they are distinct and have met different fates. Law-defining by juries is no more, but the jury's right to acquit for conscience's sake lives on. And jury discretion—the ability to make the law make sense, to temper the law's iron logic with fairness, moderation, and mercy—endures and thrives.

WILLIAM L. DWYER, IN THE HANDS OF THE PEOPLE 62-63 (2002). Thus, cases in which a juror is accused of refusing to follow the law require special consideration. *Edwards,* 303 F.3d at 632-33; *Symington,* 195 F.3d at 1085, 1087 n.6.

¶20 First, investigation into a claim that a juror is engaging in nullification risks violation of the cardinal principle that juror deliberations must remain secret. *See State v. Cuzick,* 85 Wn.2d 146, 149, 530 P.2d 288 (1975);

*Thomas*, 116 F.3d at 618 ("The secrecy of deliberations is the cornerstone of the modern Anglo-American jury system."). If a trial court inquires into the reasoning behind ongoing deliberations, then it might be tempted to second-guess the jury and influence the jury's verdict. *Symington*, 195 F.3d at 1086. More importantly, exposure of deliberations to public scrutiny would chill debate and "jeopardize the integrity of the deliberative process." *Id.* Thus, trial courts investigating such allegations must take special care not to delve into the substance of deliberations or the thought process of any particular juror.

¶21 On the other hand, a trial court must also take care not to violate the defendant's right to a unanimous jury verdict by granting a dismissal that stems from the juror's doubts about the sufficiency of the evidence. *Id.* at 1085. A discharge stemming from a juror's doubts about the sufficiency of the evidence would violate the right to a unanimous jury verdict because it " 'would enable the government to obtain a conviction even though a member of the jury that began deliberations thought that the government had failed to prove its case.' " *Sanders*, 357 F.3d at 945 (quoting *United States v. Brown*, 823 F.2d 591, 596 (D.C. Cir. 1987)).[4] Courts have recognized that

> ten or eleven members of a jury that have collectively reached agreement on a case's outcome may thereafter collectively agree that the one or two hold-outs—instead of honestly disagreeing about the merits—are actually refusing to apply the law as instructed by the court in an impermissible attempt to nullify the verdict. The jury's majority may very well further

---

[4] Although the federal right to a unanimous verdict does not extend to the states through the Fourteenth Amendment, *Apodaca v. Oregon*, 406 U.S. 404, 406, 92 S. Ct. 1628, 32 L. Ed. 2d 184 (1972) (plurality opinion to which Justice Powell concurred, 406 U.S. 356, 369, 374), this court has concluded that article I, section 21 of the Washington Constitution gives criminal defendants the right to a unanimous jury verdict. *State v. Ortega-Martinez*, 124 Wn.2d 702, 707, 881 P.2d 231 (1994) (explaining that by allowing verdicts of nine or more only in civil cases, article I, section 21 "implicitly recognizes unanimous verdicts are required in criminal cases"). The State does not present any argument that the state constitutional right would be less extensive than the federal one in this context. Thus, while the federal cases discussing violations of the federal right to a unanimous jury verdict are not binding, they are instructive.

agree to request the court's intervention with regard to those one or two dissenting jurors who are, according to the majority, refusing to apply the law.

*United States v. Abbell,* 271 F.3d 1286, 1302 (11th Cir. 2001).[5] It is not hard to imagine, as counsel noted at oral argument, that had the option been available to Lee J. Cobb in *12 Angry Men,*[6] he would have sent a note to the trial judge asking that Henry Fonda be dismissed from the jury, rendering moot that cinematic paean to the virtues of the American jury system.[7]

¶22 Dismissal of a holdout juror also risks violating the Sixth Amendment right to an impartial jury. U.S. CONST. amend. VI; *see also* WASH. CONST. art. I, § 22. If it appears that a trial court is reconstituting a jury in order to reach a particular result, then the right to an impartial jury is sacrificed. *People v. Gallano,* 354 Ill. App. 3d 941, 821 N.E.2d 1214, 1224, 290 Ill. Dec. 640 (2004); *Garcia v. People,* 997 P.2d 1, 8 (Colo. 2000). If a holdout juror is dismissed in a way that implies his dismissal stems from his views on the merits of the case, then the reconstituted jury may be left with the impression that the trial judge prefers a guilty verdict. *Garcia,* 997 P.2d at 8.

¶23 Thus, respect for these rights requires that where a trial court concludes that there is a reasonable possibility that the impetus for removal of a deliberating juror is disagreement with the juror's view of the sufficiency of the evidence, the trial court must send the jury back to deliberate with instructions that the jury continue to try to reach a verdict. Otherwise, the defendant is entitled to a mistrial. *Symington,* 195 F.3d at 1085-86; *Brown,* 823 F.2d at 596.

---

[5] Where a juror asks to be dismissed, the court must be equally careful that the request does not stem from the juror's wish to avoid the unenviable position of holdout juror, even though the juror has doubts as to the sufficiency of the evidence. *See Thomas,* 116 F.3d at 621-22; *Brown,* 823 F.2d at 595-97.

[6] 12 ANGRY MEN (Orion-Nova Productions 1957).

[7] *See also Thomas,* 116 F.3d at 622 ("The group of jurors favoring conviction may well come to view the 'holdout' . . . not only as unreasonable, but as unwilling to follow the court's instructions on the law.").

¶24 In sum, accusations that a juror is attempting nullification by refusing to follow the law present a difficult situation. The trial court must balance the cardinal principle of jury secrecy against the need to protect the right of both parties to an impartial jury and the defendant's right to a unanimous jury verdict. In this case, the Court of Appeals concluded that the trial court's inquiry should have ended when it became clear that "the jurors disagreed at least in part because of different views of the merits of the case." *Elmore,* 121 Wn. App. at 757. In addition, the Court of Appeals held that "where the record shows any reasonable possibility that the impetus for a juror's dismissal stems from his views on the merits of the case, the dismissal is error." *Id.* at 756. Thus, balancing the principles described above, this court must determine both to what extent a trial court should investigate allegations that a juror is engaging in nullification and what evidentiary standard the trial court must apply when deciding whether to dismiss a juror for refusing to follow the law.

¶25 *Scope of Investigation:* RCW 2.36.110 and CrR 6.5 place a "continuous obligation" on the trial court to investigate allegations of juror unfitness and to excuse jurors who are found to be unfit, even if they are already deliberating. *See State v. Jorden,* 103 Wn. App. 221, 227, 11 P.3d 866 (2000). A juror is unfit if he or she exhibits prejudice by refusing to follow the law or participate in deliberations. *See* RCW 2.36.110. Moreover, *both* the defendant *and the State* have a right to an impartial jury. *State v. Hughes,* 106 Wn.2d 176, 185, 721 P.2d 902 (1986). Thus, the trial court has a duty to investigate if it comes to its attention during deliberations that a juror may be attempting nullification.

¶26 Washington and other courts have granted broad discretion to the trial judge in conducting an investigation of jury problems. *Jorden,* 103 Wn. App. at 229 ("[T]he trial judge has discretion to hear and resolve the misconduct issue in a way that avoids tainting the juror and, thus, avoids creating prejudice against either party."); *Peterson,* 385 F.3d at 135 (granting trial court discretion as to

whether to conduct further inquiry, but noting that the court must take care not to taint the jury unnecessarily); *Edwards,* 303 F.3d at 634 ("[T]he district court continues to enjoy wide discretion to determine the proper scope of an investigation into whether just cause to dismiss a juror exists as long as the content of the deliberations is left undisturbed."). Even so, a study of the case law reveals that some general guidelines have emerged.

¶27 First, if a juror or jurors accuse another juror of refusing to deliberate or attempting nullification, the trial court should first attempt to resolve the problem by reinstructing the jury. *See, e.g., Abbell,* 271 F.3d at 1290; *Symington,* 195 F.3d at 1083; *People v. Cleveland,* 25 Cal. 4th 466, 21 P.3d 1225, 1228, 106 Cal. Rptr. 2d 313 (2001). If reinstruction is not effective and problems continue, any inquiry should remain as limited in scope as possible. *See Cleveland,* 21 P.3d at 1237; *see also Garcia,* 997 P.2d at 7 (" 'Where the duty and authority to prevent defiant disregard of the law or evidence comes into conflict with the principle of secret jury deliberations, we are compelled to err in favor of the lesser of two evils—protecting the secrecy of jury deliberations at the expense of possibly allowing irresponsible juror activity.' " (quoting *Thomas,* 116 F.3d at 623)). The inquiry should focus on the conduct of the jurors and the *process* of deliberations, rather than the *content* of discussions. The court's inquiry should cease if the trial judge becomes satisfied that the juror in question is participating in deliberations and does not intend to ignore the law or the court's instructions. Finally we recognize that if inquiry occurs, it should reflect an attempt to gain a balanced picture of the situation; it may be necessary to question the complaining juror or jurors, the accused juror, *and* all or some of the other members of the jury. *See Abbell,* 271 F.3d at 1290; *Symington,* 195 F.3d at 1083; *Thomas,* 116 F.3d at 611; *Cleveland,* 21 P.3d at 1228-29.

¶28 We emphasize that the trial court retains discretion to investigate accusations of juror misconduct in the manner most appropriate for a particular case, and the proce-

dures outlined above are only guidelines. However, we note that the trial court here departed from the general guidelines discussed above in several ways. First, upon receiving the notes from Jurors 5 and 12, the trial court investigated and took immediate action, rather than reinstructing the jury and allowing them to continue with deliberations. RP at 1161-62. Then, the trial court made an initial decision based only upon the content of the notes and testimony from the complaining jurors. RP at 1173-74. Even though she eventually questioned Juror 8, the trial judge made it clear beforehand that she was merely supplementing the record, and she was not inclined to change her mind. RP at 1180. We caution that the better practice would be to conduct a more balanced investigation into such allegations because of the risk that jurors may confuse a disagreement on the merits of the case for a refusal to follow the law. *See Abbell,* 271 F.3d at 1302; *Thomas,* 116 F.3d at 622. Although courts must take care not to delve into the substance of deliberations, it is possible to focus on the jurors' process, i.e., whether a juror has been participating in deliberations and whether the juror has openly expressed an intent to defy the law or the court's instructions.

¶29 *Evidentiary Standard:* As for the evidentiary standard that the trial court must apply when weighing whether a juror should be dismissed for refusal to follow the law, several different approaches have been adopted in various federal and state courts. The Ninth Circuit Court of Appeals has recognized that in the rare case where a request for juror dismissal focuses on the quality of a juror's thoughts about the case and his ability to communicate those thoughts to the rest of the jury, the need to protect the secrecy of jury deliberations will often render the trial court unable to investigate thoroughly enough to come to a definite determination as to whether the juror's vote is the result of prejudice or his view of the merits of the case. *Symington,* 195 F.3d at 1086.

¶30 Both the Second Circuit and the District of Columbia Circuit have also recognized this dilemma. *Thomas,* 116

F.3d at 622; *Brown*, 823 F.2d at 596. Those courts held that " 'if the record evidence discloses *any possibility* that the request to discharge stems from the juror's view of the sufficiency of the government's evidence, the court must deny the request.' " *Symington*, 195 F.3d at 1087 (emphasis added) (quoting *Brown*, 823 F.2d at 596). The Ninth Circuit slightly amended this evidentiary standard, concluding that if the record evidence discloses "any *reasonable* possibility that the impetus for a juror's dismissal stems from the juror's views on the merits of the case, the court must not dismiss the juror." *Id.* at 1087; *see also Gallano*, 821 N.E.2d at 1224 (adopting the "any reasonable possibility" standard). The Ninth Circuit reasoned that the "any reasonable possibility" standard was "attentive to the twin imperatives of preserving jury secrecy and safeguarding the defendant's right to a unanimous verdict from an impartial jury," and any lower evidentiary standard could lead to improper dismissal of a juror based on his or her view of the sufficiency of the evidence. *Symington*, 195 F.3d at 1087. Where there is a reasonable possibility that the impetus for the complaint is the juror's views on the merits, "the trial judge has only two options: send the jury back to continue deliberating or declare a mistrial." *Id.*

¶31 In contrast, the California Supreme Court expressly rejected the *Symington* standard, instead concluding that a juror's inability to perform his or her duty must appear in the record as a " 'demonstrable reality' " that the juror is unwilling to deliberate. *Cleveland*, 21 P.3d at 1236-37 (quoting *People v. Marshall*, 13 Cal. 4th 799, 919 P.2d 1280, 55 Cal. Rptr. 2d 347 (1996)). Thus, the California standard seems to flip the presumption, allowing dismissal if there is a demonstrable reality that the juror was acting improperly, rather than prohibiting dismissal if there is any reasonable possibility that the juror was acting properly.[8]

---

[8] However, in application, the California standard may not produce different results in most cases. In *Cleveland*, the juror's method of analysis differed from that of his fellow jurors, he halfheartedly participated in deliberations, he listened unsympathetically to his colleagues, and his explanations of his position were

¶32 Finally, the Eleventh Circuit has adopted a standard similar to *Symington*'s but has also emphasized the trial court's discretion to remove deliberating jurors for good cause. Where a juror has been accused of engaging in impermissible nullification, the juror should be excused "only when no 'substantial possibility' exists that she is basing her decision on the sufficiency of the evidence." *Abbell,* 271 F.3d at 1302 (citing *Thomas,* 116 F.3d at 621-22; *Brown,* 823 F.2d at 596). The court explained that this amounts to a " 'beyond a reasonable doubt' " standard; a juror should not be dismissed unless the court can conclude, beyond a reasonable doubt, that the juror is not basing his decision on the merits of the case. *See id.* However, once a trial court has applied the correct evidentiary standard, abuse of discretion applies, and the resulting findings of fact are reviewable only for clear error. *Id.* at 1303-04 (holding that the trial court had not abused its discretion when it found, beyond a reasonable doubt, that the juror in question was refusing to follow the law). By emphasizing both the heightened evidentiary standard and the deferential standard of review, the Eleventh Circuit struck a balance between protecting important constitutional rights and allowing the trial courts discretion where they are in the best position to make fact and credibility determinations.

¶33 While all of the above evidentiary standards would provide some guidance to a trial court attempting to resolve a similar problem, the Ninth Circuit's "reasonable possibility" standard, when combined with the Eleventh Circuit's emphasis on the abuse of discretion review, seems to best balance the rights at issue in these cases. The "any reasonable possibility" standard is not insurmountable, but it is sufficiently high to err on the side of protecting important constitutional rights. *See Symington,* 195 F.3d at 1087 n.5 (The reasonable possibility standard, in this context, "is a threshold at once appropriately high and conceivably attainable."). Moreover, this standard takes into account our

inarticulate, but there was no demonstrable reality that he was refusing to follow the law. *Cleveland,* 21 P.3d at 1238.

presumption that jurors have followed the court's instructions in that it requires the court, where there is conflicting evidence, to retain a juror if there is any reasonable possibility that the dispute among the jury members stems from disagreement on the merits of the case. *See State v. Brunson,* 128 Wn.2d 98, 109, 905 P.2d 346 (1995); *State v. Lord,* 117 Wn.2d 829, 861, 822 P.2d 177 (1991). Emphasis on the trial judge's discretion recognizes that the trial court is "uniquely situated to make the credibility determinations that must be made in cases like this one: where a juror's motivations and intentions are at issue." *Abbell,* 271 F.3d at 1303.

¶34 We affirm the Court of Appeals' adoption of the "any reasonable possibility" standard; where a deliberating juror is accused of refusing to follow the law, that juror cannot be dismissed when there is any reasonable possibility that his or her views stem from an evaluation of the sufficiency of the evidence. Yet we also emphasize that this standard is applicable only in the rare case where a juror is accused of engaging in nullification, refusing to deliberate, or refusing to follow the law. In addition, we adopt the Eleventh Circuit's position that once the proper evidentiary standard is applied, the trial court's evaluation of the facts is reviewable only for abuse of discretion.

¶35 Turning to the facts of this case, the difficulty here arises because the record contains conflicting evidence. Jurors 5 and 12 both reported that Juror 8 expressed an intent to ignore the law, and Juror 12 claimed that Juror 8 was not participating in deliberations. Meanwhile, the last line of the note from Juror 5 (Ex. 129) indicates that Juror 8 disagreed with the other jurors as to witness credibility. Furthermore, Juror 8's testimony reveals that in his view, the case hinged on witness credibility:

> If we believe the witnesses are credible, then we vote one way. But if we do not believe what the witnesses say, then we are obligated to vote the other way. And what's in the thing doesn't mandate how we have to vote. It's what we believe the testimony—you know, is the testimony credible?

RP at 1183. Juror 8 shared this opinion with the jury, and Juror 12 reported arguing about the evidence with Juror 8. RP at 1167, 1183. Thus, there are indications in the record that Juror No 8 was participating in deliberations. RP at 1183. In addition, Juror 8's emphasis on credibility seems reasonable, given the particular facts of this case. Elmore's guilt depended upon her level of involvement in the crime, and the jurors' determination of her involvement necessarily depended upon which witnesses they believed.

¶36 On the other hand, the trial court entered findings that Jurors 5 and 12 were credible and Juror 8 was not. The trial court also concluded that Juror 8's dismissal was not based on "any valid disagreements he may have had with other jurors, including disagreements regarding the credibility of witnesses." CP at 65; *see Edwards,* 303 F.3d at 634 (juror's holdout status did not insulate him from dismissal where the trial court "expressly disavowed any possibility that Juror 68 was being dismissed because of his view of the evidence"). However, this finding seems to recognize that Juror 8 had expressed *some* valid disagreement with the other jurors' views of the evidence. CP at 65. The State admits that the trial court saw two bases for Juror 8's position: his evaluation of the witnesses' credibility *and* his refusal to follow the law. According to the State, the refusal to follow the law was enough to justify the juror's dismissal. Suppl. Br. of Pet'r at 6.

¶37 However, there is no indication that, when weighing the conflicting evidence in this case, the trial court applied the heightened evidentiary standard we adopted above. Such a heightened standard is required to protect the defendant's rights to an impartial jury and a unanimous jury verdict. Where there is conflicting evidence as to the reasoning behind a juror's position, the heightened standard requires the trial court to err on the side of allowing the juror to continue to deliberate if there is *any reasonable possibility* that the juror's views are based on the sufficiency of the evidence. The heightened standard is especially necessary where the court's information is limited. *See*

*Symington,* 195 F.3d at 1086 (noting that the trial court " 'will likely prove unable to establish conclusively the reasons underlying' the request for dismissal" (quoting *Brown,* 823 F.2d at 596)). In this case in particular, the trial court's initial decision was made on the limited information offered by the complaining notes and their authors' testimony. Even after receiving conflicting testimony from Juror 8, the court did not interview other jurors. Therefore, the application of the "any reasonable possibility" standard in this case would have served to balance against the limited information being considered by the trial court.

¶38 Cases in which the appellate court has deferred to the trial court's dismissal of a deliberating juror under similar circumstances have made it clear that those courts applied the heightened evidentiary standard. *See Abbell,* 271 F.3d at 1303 (explaining that the trial court found there was no substantial possibility that the juror's position was based on her evaluation of the merits of the case); *see also Brown v. United States,* 818 A.2d 179, 187 (D.C. Cir. 2003) (upholding dismissal, even on conflicting evidence, where the judge found just cause existed beyond a reasonable doubt, satisfying the *tough legal standard* of reasonable possibility). In contrast, the trial court here failed to apply any sort of heightened standard. Thus, we hold that the trial court erred by failing to apply a more exacting evidentiary standard before removing Juror 8 for refusing to follow the court's instructions. We affirm the Court of Appeals.

## III

## Conclusion

¶39 The founders of our republic viewed the jury as " 'the very palladium of free government' " and for over two centuries our civic culture has valued its wise dispensation

of justice laced with common sense.[9] The rare case in which a deliberating juror is accused of engaging in jury nullification presents a "delicate and complex" problem. *Thomas,* 116 F.3d at 618. The trial court has a duty to adequately investigate such charges but also must take care to respect the principle of jury secrecy. In order to protect the defendant's rights to an impartial jury and a unanimous jury verdict, once the evidence is gathered, the trial court must apply a heightened evidentiary standard. We adopt the test set forth in *Symington*: a deliberating juror may not be dismissed where there is any reasonable possibility that the impetus for dismissal is the juror's views of the sufficiency of the evidence. However, once a trial court has applied the correct evidentiary standard, that court's determination of whether the juror should be dismissed is reviewable only for abuse of discretion. Here, the trial court based its decision on very limited evidence, and it failed to apply a heightened evidentiary standard. We affirm the Court of Appeals and remand for a new trial.

ALEXANDER, C.J., and C. JOHNSON, MADSEN, SANDERS, CHAMBERS, OWENS, and FAIRHURST, JJ., concur.

¶40 J.M. JOHNSON, J. (dissenting) — Defendant Roberta Elmore orchestrated and facilitated a series of crimes that culminated in the home invasion of a disabled man and the brutal murder of innocent caretaker, Scott Claycamp. Elmore was convicted by the requisite unanimous jury of first degree felony murder, first degree burglary, first degree kidnapping, second degree assault, and conspiracy to commit robbery. The majority now reverses this conviction because one juror who refused to follow the law was replaced by an alternate in accordance with Washington law.

¶41 Washington's statute is designed to protect the right to an impartial jury by requiring the judge to remove

---

[9] WILLIAM L. DWYER, IN THE HANDS OF THE PEOPLE, at I (2002) (quoting THE FEDERALIST PAPERS).

(excuse) from jury service those who will not or cannot properly perform jury service. The requirement is mandatory. According to the statute:

It shall be the duty of a judge to excuse from further jury service any juror, who in the opinion of the judge, has manifested unfitness as a juror by reason of bias, prejudice, indifference, inattention or any physical or mental defect or by reason of conduct or practices incompatible with proper and efficient jury service.

RCW 2.36.110.

¶42 There is no showing the judge below did not fully comply with the statute. Indeed, I assume that every judge in this state—at least every trial judge—reads and scrupulously applies this mandatory statute, which is designed to protect the right to jury provided in both the United States and Washington State Constitutions.

¶43 Three things readily apparent from reading this statute are worth reiterating. First, the language makes clear the obligation of the judge is mandatory: "It shall be the duty of a judge . . . ."

¶44 Second, the statute charges the trial judge with the discretion as well as the duty to make requisite findings: "any juror, who *in the opinion of the judge*, . . . ." (Emphasis added.)

¶45 Finally, the test for "manifested unfitness as a juror" includes bias or prejudice or "conduct or practices incompatible with proper and efficient jury service."

¶46 The Washington jury system also provides for alternate jurors to be selected, thus allowing the replacement of any juror incapacitated or found in violation of the above statute. Under CrR 6.5,

[an] alternate juror may be recalled at any time that a regular juror is unable to serve, including a second phase of any trial that is bifurcated. If the jury has commenced deliberations prior to replacement of an initial juror with an alternate juror, the jury shall be instructed to disregard all previous deliberations and begin deliberations anew.

¶47 In this case, 14 jurors were selected and sworn by the judge to "well and truly try the case." Report of Proceedings (RP) at 217. One such juror was properly discharged and replaced with an alternate. After several days' deliberation, the resulting jury unanimously convicted defendant of murder, robbery, kidnapping, assault, and conspiracy to commit robbery. Clerk's Papers (CP) at 116-27.

¶48 Defendant appealed, contending that she was deprived of her constitutional right to a unanimous verdict by a fair and impartial jury and thus denied due process of law. The Court of Appeals held for defendant. *See State v. Elmore*, 121 Wn. App. 747, 90 P.3d 1110 (2004). Without expressly stating whether its decision rests upon the United States Constitution or the Washington State Constitution or otherwise, this court agrees. The majority rewards the defendant with a new trial, requiring victims and witnesses (those not now dead or unavailable) to face still another trial.

¶49 Because I conclude the trial judge did not violate the United States Constitution or the Washington State Constitution by faithfully following our statute to assure a proper jury, and because I doubt the wisdom of encouraging gaming of our justice system, I dissent.

Discussion

¶50 Article I of our state constitution provides that "[t]he right of trial by jury shall remain inviolate." WASH. CONST. art. I, § 21; *see also* U.S. CONST. amend. VI. Trial by jury serves as an important check and balance upon the executive and judicial branches, protecting the rights of individuals and providing the sovereign people of the State with an important, direct role in the administration of justice. *See* WASH. CONST. art. I, § 1 ("All political power is inherent in the people, and governments derive their just powers from the consent of the governed, and are established to protect and maintain individual rights.").

¶51 Pursuant to our state constitution, this court has held that a criminal defendant in superior court has a right to be tried by 12 jurors. *State v. Lane*, 40 Wn.2d 734, 736-37, 246 P.2d 474 (1952); *State v. Ellis*, 22 Wash. 129, 60 P. 136 (1900). Our state constitution has also been held to implicitly recognize that unanimous verdicts are required in criminal cases. *State v. Ortega-Martinez*, 124 Wn.2d 702, 707, 881 P.2d 231 (1994).[10]

¶52 There are no cases in this court that challenge a trial judge's decision to remove a deliberating juror for cause, presumably because judges faithfully perform their duties. The few cases in the Court of Appeals have generally stated the law in a correct manner and so have not been reviewed by this court. *See State v. Jorden*, 103 Wn. App. 221, 11 P.3d 866 (2000) (holding standard of review for juror removal during trial is abuse of discretion); *State v. Ashcraft*, 71 Wn. App. 444, 859 P.2d 60 (1993) (holding standard of review for juror removal during deliberation is abuse of discretion).

¶53 However, in this case the majority relies primarily upon a handful of federal cases that interpret the different federal rules and creates a new "heightened" standard: "[W]here a deliberating juror is accused of refusing to follow the law, that juror cannot be dismissed when there is any reasonable possibility that his or her views stem from an evaluation of the sufficiency of the evidence." Majority at 778. The majority supplements this standard with a set of "guidelines" that includes a de facto rule requiring a judge to reinstruct the whole jury where one deliberating juror refuses to follow the law. Majority at 774. The majority faults this judge *not* for abusing her discretion but for failing to engage in the future-telling or mind-reading required to apply the majority's new standard and guidelines, instead of the existing statute.

¶54 The majority's standard, largely adopted from the federal case of *United States v. Symington*, 195 F.3d 1080

---

[10] By contrast, there is neither a federal constitutional guaranty of a 12 member jury in criminal cases nor a unanimous verdict requirement in such cases. *See Williams v. Florida*, 399 U.S. 78, 90 S. Ct. 1893, 26 L. Ed. 2d 446 (1970); *Apodaca v. Oregon*, 406 U.S. 404, 92 S. Ct. 1628, 32 L. Ed. 2d 184 (1972).

(9th Cir. 1999), ignores this court's long standing rule that a trial court's ruling is presumed correct. *State v. Michaels*, 60 Wn.2d 638, 641, 374 P.2d 989 (1962). *See also State v. Muller*, 114 Wash. 660, 661, 195 P. 1047 (1921). The long standing rule requires a reviewing court to accept a trial court's ruling as correct unless an affirmative showing to the contrary is made.

¶55 Our Court of Appeals cases requiring a showing of abuse of discretion in reviewing trial judge's dismissal of jurors are consistent with this rule. *See Jorden*, 103 Wn. App. 221; *Ashcraft*, 71 Wn. App. 444. The majority's standard cuts against this rule by requiring that the juror cannot be removed for refusing to follow the law or instructions if there is *any* possibility that said juror has been accused of refusing to follow the law because of the juror's views on the case.

¶56 The majority's standard is not only contrary to our case law but also clearly unworkable. It may allow a blatantly unfit juror to remain if a scintilla of evidence can be produced that the request for removal has any connection with that juror's view on the merits. Such a scintilla of evidence will nearly always be available, usually rendering trial courts powerless to remove unfit jurors once deliberations have begun.[11]

¶57 Ironically, the majority's standard does not protect a defendant's constitutional right to an unbiased jury. Under the majority's standard, a trial court could not remove a deliberating juror who refuses to follow the law (for example, by professing that the State need prove only one out of four elements of a crime to convict), if that juror also evidences a view on the sufficiency of the State's evidence. The majority's standard places a serious strain upon a trial court's ability to enforce RCW 2.36.110 and to thereby

---

[11] The majority's standard would not permit a trial judge to dismiss a juror who visits the crime scene, contacts the witnesses, or researches the case on the Internet if there is also reasonable possibility of that juror's disagreement with other jurors over the evidence.

ensure an impartial and unbiased jury pursuant to the United States and Washington State Constitutions.[12]

¶58 California, which has a statutory provision much like Washington's allowing for the replacement of a removed juror with an alternate,[13] employs a more workable standard. In *People v. Cleveland*, 25 Cal. 4th 466, 21 P.3d 1225, 106 Cal. Rptr. 2d 313 (2001), the California Supreme Court rejected the reasoning here and in *Symington* and held that a juror could be constitutionally discharged if "it appears as a 'demonstrable reality' that the juror is unable or unwilling to deliberate." *Id.* at 484. This standard is sufficiently high to protect the defendant's right to an impartial jury from judicial manipulation while allowing a judge prudential power to protect the parties from a biased or unfit juror.

¶59 Applying the "demonstrable reality" standard to the facts of this case, I would hold the trial judge's decision is abundantly supported. A digression to the facts is appropriate because these facts are an unusually strong example of a judge's appropriate removal and replacement of such a juror with an alternate.

¶60 After the case was submitted to the jury, the jury foreman sent a note to the judge noting:

---

[12] Juries embody the voice of the people, and the majority's cited reference distinguishing between law-defining juries and conscience-driven juries is important. Majority at 769-71. Our constitution and laws do not permit intrusions into the inviolate conscience of jurors, but the majority's standard seriously hampers a trial judge's ability to excuse jurors who manifest unfitness through refusal to follow the law.

[13] *Compare* CAL. PENAL CODE § 1089 ("If at any time, whether before or after the final submission of the case to the jury, a juror dies or becomes ill, or upon other good cause shown to the court is found to be unable to perform his or her duty, or if a juror requests a discharge and good cause appears therefor, the court may order the juror to be discharged and draw the name of an alternate . . . .") *with* RCW 2.36.110 ("It shall be the duty of a judge to excuse from further jury service any juror, who in the opinion of the judge, has manifested unfitness as a juror by reason of bias, prejudice, indifference, inattention or any physical or mental defect or by reason of conduct or practices incompatible with proper and efficient jury service.") *and* CrR 6.5 ("[an] alternate juror may be recalled at any time that a regular juror is unable to serve . . . .").

Your Honor:

As the presiding juror, I feel compelled to ask your assistance. We have a juror on the panel who has made statements which lead me to believe he was predisposed to not follow the instructions given by you or to follow the law contained in those instruction [sic].

Prior to adjourning on Thursday, this juror said, "I don't care what the judge said. The law is shit and I won't convict anyone based on what the law says."

This juror has disregarded every witness statement regarding the defendant as credible.

Pl.'s Ex. 129.

¶61 A second juror sent a note that was less clear. This juror later confirmed that the first line of the note quoted the challenged juror as saying "I don't care what law says." Pl.'s Ex. 128.

¶62 Out of an abundance of caution, the judge held a brief hearing outside the presence of the jury in which the two jurors were separately asked whether the notes were written by them and were true and correct. Upon hearing this evidence, the judge indicated the record was probably sufficient to remove Juror 8. Counsel and the judge agreed to briefly question Juror 8 directly. At this inquiry:

Juror #8 admitted that he did say to the other jurors "that it does not matter what the paper says," referring to the court's instructions to the jury.

Br. of Resp't at 5 (quoting RP at 1183).

¶63 The judge excused the juror and replaced him with one of the alternates. In a final written ruling the judge made the findings, which under the statute required removal:

1. Juror #8 has at times refused to participate in deliberations.

2. Juror #8 has stated that he refuses to follow the law as provided by the court including the statements, "I don't care what the judge said. The law is shit and I won't convict anyone based on what the law says," and "I don't care what the law says."

3. The court finds the written and verbal statements of Jurors #5 and #12 credible.

Br. of Resp't at 5-6.

¶64 The judge went even further to find that she had not relied upon an improper cause to remove the juror:

Juror number 8 . . . was not disqualified from further jury service because of any valid disagreement he may have had with other jurors, including disagreements regarding the credibility of witnesses.

Br. of Resp't at 7 (CP at 293-324 (Finding 74)).

¶65 And the judge also concluded:

Juror number 8, Sidney Britton, manifested unfitness as a juror by reason of bias and prejudice and by reason of conduct incompatible with proper and efficient jury service.

Br. of Resp't at 7 (CP at 293-324 (Conclusion of Law 9)).

¶66 The juror was properly removed in accordance with the statute setting out the judge's "duty." *See* RCW 2.36.110. There is *no* suggestion that the members of the jury who convicted Elmore were in any way unreasonable, unfair, or biased. From the record it is clear that there was a "demonstrable reality" that the dismissed juror was unable or unwilling to follow and apply the law. Accordingly, the trial judge did not abuse her discretion in dismissing the juror.

¶67 The majority, however, posits a new standard with corresponding guidelines and contends that "the trial court here departed from the general guidelines . . . in several ways." Majority at 775. Here, "several" refers to the judge's decision not to reinstruct the jury, as well as the judge's initial determination to exclude the juror prior to the testimony of the questionable (discharged) juror.

¶68 The majority improperly transforms a discretionary trial court decision concerning jury reinstruction into a categorical requirement. None of the majority's cited cases support this new requirement, and there is no good reason for it. A decision to reinstruct the jury involves consider-

ation of particularized variables and contingencies that require discretionary decision-making by any trial judge. Jury reinstruction might be of help in certain circumstances, but it might not be in others. A judge could reasonably find that such an instruction would be futile in some cases for the reason that a repeated instruction would mean nothing to a juror who has professed an unwillingness to follow the law and instructions, as was the case with the juror here.

¶69 A trial judge could also reasonably find that the instruction could cause disruption to jury deliberation by placing the judge at odds with a particular juror or driving a wedge between deliberating jurors. It was undoubtedly apparent to the trial judge here that a juror who had vehemently refused to be bound by the court's jury instructions the first time was even less likely to be bound through a repetition of those instructions.

¶70 Furthermore, the majority incorrectly admonishes the trial court for investigating the alleged juror misconduct and taking immediate action "rather than reinstructing the jury and allowing them to continue with deliberations." Majority at 775. The majority disregards the fact that the trial judge heard testimony from the dismissed juror and issued specific findings supporting the dismissal. In those findings, the judge clearly indicated that the juror's disregard of the law was the basis for the dismissal and also specifically found that the juror's views about the evidence did *not* provide the basis for the dismissal.

¶71 Since it would be difficult to conclude that the judge's conduct amounts to an "abuse of discretion" or to declare that her findings shouldn't be trusted, the majority finds refuge for its second-guessing of the trial judge through enactment of the new "any reasonable possibility" standard. By placing the trial judge's decision into a netherworld where discretion was not abused but where an as-yet-unannounced rule was not fathomed and applied by the judge, the majority justifies overturning the trial judge—and the jury verdict—in this case.

CONCLUSION

¶72 There is no claim here that our statute requiring judges to remove jurors who are unfit or unwilling to faithfully perform their duties is unconstitutional. The judge here properly applied the statute to a juror who refused to follow the law and thereby acted to assure a fair and impartial jury. The majority creates a new standard not found in the constitution for removing an unfit juror. Because this new standard is not in the interests of justice and not required by our statute or the constitution, I dissent.