# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 48543-5-II |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| ISAAC QUITIQUIT, | |
| Appellant. | |

BJORGEN, C.J. — Isaac Quitiquit appeals his convictions and sentences for two counts of third degree child rape. He argues that (1) the trial court deprived him of a unanimous jury verdict by failing to properly instruct the jury, (2) the trial court erred by imposing sentences that exceeded the statutory maximum for his convictions, and (3) we should waive his appellate costs should the State prevail.

We do not consider Quitiquit's unanimity challenge, because he did not raise this challenge before the trial court and has not shown that his claimed constitutional error is manifest under RAP 2.5(a). We hold that the trial court erred by imposing sentences in excess of the statutory maximum for Quitiquit's convictions. We also decline to exercise our discretion to address the issue of appellate costs.

Accordingly, we affirm Quitiquit's convictions and remand to the trial court to reduce the term of community custody so that the combined term of confinement and community custody does not exceed the statutory maximum.

FACTS

On May 31, 2014, EU[1] spent the night at Quitiquit's home. Quitiquit is EU's uncle.

During this visit, Quitiquit had oral and digital sexual contact with EU. A week after this

incident, Quitiquit again had oral and digital sexual contact with EU. EU disclosed what had

occurred to her counselor, who subsequently notified law enforcement. At the time of the

incidents, EU was 14 years old.

The State charged Quitiquit with two counts of third degree child rape. On December 14,

2015, before the State gave its opening statement at trial, the court orally instructed the jury as

follows:

> [Y]ou are not to discuss this case among yourselves or with anyone else. A
> violation of this order is serious. It may involve a personal penalty to you and result
> in great injury or harm to the parties or this case.
> . . . .
> I am obliged to repeat instructions from time to time. They remain in effect
> throughout the entire trial and at every recess, whether I remind you of them or not.
> . . . .
> Finally, you will be taken to the jury room by the bailiff where you will
> select a presiding juror. The presiding juror will preside over your discussions of
> the case which are called "deliberations." You will then deliberate in order to reach
> a decision called a "verdict."
> Until you are in the jury room for these deliberations, you must not discuss
> the case with other jurors. . . . No discussion also means no emailing, texting,
> messaging, blogging, or any other form of electronic communication.

Verbatim Report of Proceedings (VRP) (Dec. 14, 2015) at 44-45, 48-49.

On December 15, before the jury was excused for lunch, the court told the jury:

> I need to remind you of a few things. You are reminded not to discuss this
> case or any facet of this case among yourselves as a group or individually, or with
> anyone else, or allow anyone else to discuss it in your presence. You are not to

---

[1] General Order of Division II, 2011-1 *In re: The Use of Initials*.

allow yourself to be exposed to any outside information about this case.

VRP (Dec. 15, 2016) at 230.

On December 16, before the jury began deliberating, the court again addressed the jury:

[M]y previous instructions regarding your activities outside the courtroom still apply to you, and they will continue to apply to you until the full jury has completed its deliberations and has been discharged from this case.
        So to repeat those instructions, do not discuss the case with anyone. This applies to your Internet and electronic discussions as well. You may not talk about the case via text messages, email, telephone, Internet chat, blogs, or social networking websites.
. . . .
        Do not discuss these matters with other jurors. Do not read, view, or listen to any report from the newspaper, magazines, social networking websites, blogs, radio, or television on the subject of this trial.

VRP (Dec. 16, 2015) at 353-54.

The trial court read its instructions to the jury, including the following instruction on unanimity:

        As jurors, you have a duty to discuss the case with one another and to deliberate in an effort to reach a unanimous verdict. Each of you must decide the case for yourself, but only after you consider the evidence impartially with your fellow jurors. During your deliberations, you should not hesitate to re-examine your own views and to change your opinion based upon further review of the evidence and these instructions. You should not, however, surrender your honest belief about the value or significance of evidence solely because of the opinions of your fellow jurors. Nor should you change your mind just for the purpose of reaching a verdict.

Clerk's Papers (CP) at 23.

The jury found Quitiquit guilty on both counts, and he was sentenced to 34 months' imprisonment and 36 months of community custody on each count to be served concurrently.

Quitiquit appeals his convictions and sentences.

3

ANALYSIS

I. JURY UNANIMITY

Quitiquit argues that by failing to expressly instruct the jury that "deliberation may only occur when all twelve jurors are present and only as a collective," the trial court deprived him of a unanimous jury verdict. Br. of Appellant at 11. We do not reach this challenge.

Under our state constitution, "[c]riminal defendants . . . have a right to a unanimous jury verdict." *State v. Ortega-Martinez*, 124 Wn.2d 702, 707, 881 P.2d 231 (1994); WASH. CONST. art. I, § 21.[2] Our Supreme Court has stated that "[j]ury unanimity means that jurors should reach 'consensus . . . through rational, persuasive argument' among themselves." *State v. Lamar*, 180 Wn.2d 576, 584, 327 P.3d 46 (2014) (quoting SAUL M. KASSIN, THE AMERICAN JURY: HANDICAPPED IN THE PURSUIT OF JUSTICE, 51 Ohio St. L.J. 687, 703 (1990)). However, jury unanimity is not necessarily achieved where a jury has voted unanimously. *Lamar*, 180 Wn.2d at 585. Instead, jury unanimity

> is a consensus reached after each juror examines the evidence and the parties' arguments about what the evidence means, in light of the jury instructions, and all of the jurors exchange their individual perceptions, experiences, and assessments.

*Id*.

Although Quitiquit did not raise the issue of juror unanimity at trial, he takes the position that our review is proper under RAP 2.5(a)(3). RAP 2.5(a)(3) authorizes review of an issue not raised in the trial court if the issue involves a "manifest error affecting a constitutional right." As the Supreme Court explained in *Lamar*, "[f]or a claim of error to qualify as a claim of manifest

---

[2] Article I, section 21 states in part, "[t]he right of trial by jury shall remain inviolate, but the legislature may provide for a jury of any number less than twelve in courts not of record, and for a verdict by nine or more jurors in civil cases in any court of record." Our Supreme Court has held that "by allowing verdicts of nine or more only in civil cases, the final clause [of the section] implicitly recognizes unanimous verdicts are required in criminal cases." *Ortega-Martinez*, 124 Wn.2d at 707.

error affecting a constitutional right, the defendant must identify the constitutional error and show that it actually affected his or her rights at trial." 180 Wn.2d at 583.

Article I, section 21 of the state constitution "gives criminal defendants the right to a unanimous jury verdict." *State v. Elmore*, 155 Wn.2d 758, 771 n.4, 123 P.3d 72 (2005). In order to determine whether the claimed error was identifiable and consequently prejudicial, "the trial record must be sufficient to determine the merits of the claim." *State v. O'Hara*, 167 Wn.2d 91, 99, 217 P.3d 756 (2009). If facts necessary to adjudicate the claimed error are not present in the record on appeal, then no actual prejudice is shown and the error is not manifest. *Id*. Stated another way, "the focus of the actual prejudice [analysis] must be on whether the error is so obvious on the record that the error warrants appellate review." *Id*. at 99-100 (footnote omitted).

Quitiquit asserts that "[w]hat is not clear from the record is whether the jurors deliberated the entire three hours, or instead broke for lunch," and that there is a "reasonable possibility some jurors discussed the case without the benefit of every other juror's presence." Br. of Appellant at 12-13. Unlike *Lamar*, where the erroneous jury instruction was clearly reflected in the record on appeal, 180 Wn.2d at 580-82, the record in this case does not suggest that a violation of juror unanimity occurred. Instead, Quitiquit's argument invites us to assume that a constitutional error might have occurred. Insofar as the error is not apparent from the record, Quitiquit cannot demonstrate actual prejudice. Therefore, under the case law just noted, he cannot raise this issue for the first time on appeal under RAP 2.5(a)(3) because the error is not "manifest." Consequently, this issue is not before us for decision.

## II. SENTENCING

Quitiquit contends that his sentences exceeded the statutory maximum for his convictions. The State concedes that Quitiquit's contention is correct, and we agree.

5

A trial court errs "when it impos[es] a term of confinement plus a term of community custody exceeding the statutory maximum." *State v. Hernandez*, 185 Wn. App. 680, 688, 342 P.3d 820 (2015), *review denied*, 185 Wn.2d 1002 (2016). In *State v. Boyd*, our Supreme Court held that "the trial court, not the Department of Corrections, [is] required to reduce [the defendant]'s term of community custody to avoid a sentence in excess of the statutory maximum." 174 Wn.2d 470, 473, 275 P.3d 321 (2012). Similarly, RCW 9.94A.701(9) states that

> [t]he term of community custody specified by this section shall be reduced by the court whenever an offender's standard range term of confinement in combination with the term of community custody exceeds the statutory maximum for the crime as provided in [former] RCW 9A.21.021 [2011].

Quitiquit was sentenced to 34 months' imprisonment and 36 months of community custody on each count, served concurrently, for a total of 70 months. Quitiquit's convictions were for class C felonies. Under former RCW 9A.20.021, the maximum sentence for a class C felony is five years, or 60 months. Therefore, we accept the State's concession and remand this case to the trial court to reduce the terms of community custody so that the combined terms of confinement and community custody do not exceed the statutory maximum.

### III. APPELLATE COSTS

Quitiquit asks us to exercise our discretion to deny any appellate costs the State requests. Under RAP 14.2, if the State decides to file a cost bill, Quitiquit may challenge that on the basis of inability to pay, and a commissioner of this court will determine whether to award appellate costs. Therefore, we decline to reach this issue.

CONCLUSION

We affirm Quitiquit's convictions and remand to the trial court to correct his sentences.

A majority of the panel having determined that this opinion will not be printed in the

Washington Appellate Reports, but will be filed for public record in accordance with RCW

2.06.040, it is so ordered.

Bjorgen, C.J.

BJORGEN, C.J.

We concur:

WORSWICK, J.

LEE, J.