GORDON McCLOUD, J. (concurring)
 

 ¶ 86 The trial court presided over a good portion of the trial in this case and heard one alibi witness in particular. It then made the assumption that juror 12 would be too favorable to that alibi witness and, hence, too favorable to the defense. 5 Verbatim Report of Proceedings (VRP) (July 29, 2014) at 861-62 ("Counsel points out correctly that Ms. [Sharon] Burton is a critical witness[,] and even though there is not a real strong relationship between the juror and the witness I think given the importance of the witness's role in the case it's appropriate for Juror 12 to be excused ... given the importance of Ms. Burton's testimony and that's why I'm granting the State's motion.").
 

 ¶ 87 The State made the same assumption.
 
 Id.
 
 at 860 ("I viewed Ms. Burton to be a very critical witness in this case. She is an alibi witness and, you know, if the jurors believe Ms. Burton then it's a big deal. I mean if they believe her that means my case goes nowhere.").
 

 ¶ 88 But there was only one basis for this assumption: the fact that juror 12 and the critical alibi witness were both affiliated with the same tribe, the Lummi Nation.
 
 [1]
 

 ¶ 89 It is impermissible to dismiss a seated juror for either reason-the assumption that the seated juror might be leaning toward crediting defense witnesses or the fact that a juror and a defense witness share an affiliation with the same tribe. It is doubly impermissible to dismiss a juror for both reasons. In this case, both reasons together threaten the defendant's constitutional rights to a jury trial, to jury unanimity, and to equal protection,
 as well as the juror's own constitutional right to serve free from discrimination on the basis of tribal citizenship. U.S. CONST. amends. VI, XIV ; WASH. CONST. art. I, §§ 21, 22. For that reason, the midtrial dismissal of juror 12 amounts to constitutional error; the State has the burden of proving such error harmless beyond a reasonable doubt, and the State has failed to carry that burden.
 

 ¶ 90 I therefore concur in the lead opinion's conclusion that we must reverse and remand for a new trial. I write separately to address the basis for the trial court's error: the assumption that one tribal citizen is incapable of fairly evaluating the testimony of a witness associated with the same tribe.
 
 [2]
 

 BACKGROUND
 

 ¶ 91 On September 7, 2012, Bellingham police officer Lewis Leake attempted to stop a black Kia Sorrento SUV after observing it commit a traffic violation. 4 VRP (July 28, 2014) at 535-40. Instead of stopping, the Kia sped away and led Officer Leake on a chase. 1 VRP (July 22, 2014) at 85-89; 4 VRP (July 28, 2014) at 541-44. When the officer finally caught up to the Kia, it was stopped in the middle of the road with the driver's side door open and the driver gone. 1 VRP (July 22, 2014) at 90; 4 VRP (July 28, 2014) at 546-48. Inside the Kia was passenger Athena Aardema, who eventually identified the driver as Adrian Sassen Van Elsloo. 1 VRP (July 22, 2014) at 90-91; 4 VRP (July 28, 2014) at 550-51, 554-56, 684. After observing the handle of a shotgun inside the Kia, Officer Leake impounded the car. 4 VRP (July 28, 2014) at 558-60. When police searched the vehicle several days later, they found guns and ammunition, various drugs, a digital scale, and receipts for prepaid cell phones. 2 VRP (July 23, 2014) at 300-02, 305, 315-19, 324, 330, 337; 4 VRP (July 28, 2014) at 560-62, 566-67, 635, 659-64, 667-70. Several months later, the Whatcom County prosecutor charged Sassen Van Elsloo with nine felonies in connection with the weapons and contraband recovered from the Kia.
 

 ¶ 92 Sassen Van Elsloo's defense theory at trial was that he was not in the Kia at all-he was elsewhere. In support of that theory, he presented testimony by an alibi witness, Sharon Burton. 5 VRP (July 29, 2014) at 770-826. Burton testified that she was an inpatient coordinator and counselor for the Lummi Nation's drug and alcohol treatment program, that Aardema and Sassen Van Elsloo had a "[v]ery volatile" relationship, and that Sassen Van Elsloo had been at Burton's house on September 7, 2012-the day of the crime.
 
 Id.
 
 at 770, 774-76. Burton remembered her activities that day because she had gone to the doctor in the morning, regarding complications from cataract surgery, and then called in sick for the rest of the day.
 
 Id.
 
 at 799. She testified that Sassen Van Elsloo started receiving phone calls at some point after 11:30 a.m. that day, and that the calls seemed to upset him.
 
 Id.
 
 at 780. On cross-examination, Burton was evasive about statements she made to investigators before trial.
 
 Id.
 
 at 807-11. A written report about those statements indicated that she told investigators she was not sure whether she had arrived home in the late morning or the early afternoon on September 7, 2012.
 
 Id.
 
 at 825, 881. Burton also admitted that she was lying down and resting for part of the time that she claimed Sassen Van Elsloo could not possibly have left her house and that Sassen Van Elsloo called her home several times from jail after his arrest on the charges in this case.
 
 Id.
 
 at 815-17. In short, Burton was a crucial, but imperfect, alibi witness.
 

 ¶ 93 After Burton's testimony, juror 12 approached the bailiff and indicated that she
 had previously met Burton.
 
 Id.
 
 at 853. The connection was so remote that juror 12 had not recognized Burton's name when it was mentioned on the juror questionnaire.
 
 Id.
 
 at 853, 859. The court questioned juror 12 and learned that she had met Burton at the Lummi Business Council's "CARE" office, a chemical dependency treatment program, where juror 12 went to provide information that would help juror 12's nephew obtain services.
 
 Id.
 
 at 854-55. Juror 12 said she believed she had met Burton "maybe twice" about two years before the trial.
 
 Id.
 
 at 856. The prosecutor pressed juror 12 to admit that she had a "positive experience" or "a pretty good feeling" about Burton.
 
 Id.
 
 at 857-58. Juror 12 unequivocally responded that she did not have any positive feelings about Burton as an individual but instead had positive feelings about the Lummi Nation's ability to marshal social services for its citizens:
 

 JUROR NO. 12: Do I believe she was a positive person for him? I can't say that because I think what was more positive for my nephew is when he finally went to treatment.
 

 [STATE]: My question is not so much about the nephew, but do you feel like, do you feel like it was a positive experience for you to deal with her?
 

 JUROR NO. 12: I am not really sure. I can't say that because I've worked with, you know, she was only the first CARE program in Washington and I know the director of the CARE program.
 

 ....
 

 JUROR NO. 12: ... [T]here was no good or bad, it was just all, you know, normal as it would be trying to just get the help I wanted for my family member.
 

 ....
 

 [STATE]: So that's kind of a positive thing or positive feeling that you're having about Ms. Burton; is that right?
 

 JUROR NO. 12: Well, it's not Ms. Burton, it's my nephew I'm more positive with. She wasn't inter-reacting with my nephew while he was gone or when he came back. It's more what he did for himself.
 

 [STATE]: I understand that, but it sounds like you kind of intellectualized it. I mean you're talking about, I mean you had a pretty good feeling, you must have a pretty good feeling about Ms. Burton and how she helped you; isn't that fair?
 

 JUROR NO. 12: I guess. It's not, I wouldn't call it from her. I'd call it
 
 from our own community
 
 for the help so
 
 that's what your tribe is for
 
 is to try to help the funds
 
 with our community
 
 people that need the assistance.
 

 [STATE]: What do you think about me cross-examining her, is that something that concerned you?
 

 JUROR NO. 12: No, I just brought up that I think I knew her. I don't socialize with her or anything. I just kind of recognize her. I don't know her by name, or first name.
 

 ....
 

 JUROR NO. 12: I can tell you that if I was to see her again out on the road I probably won't remember her again any way.
 

 Id.
 
 at 857-59 (emphasis added).
 

 ¶ 94 After the questioning, the prosecutor moved to dismiss juror 12 even though he could not point to any evidence that she was biased:
 

 Now, whether I can absolutely put a finger on that she can't be fair or whether what she says ... about being fair or not I think that's kind of besides the point. She, through a lot of questioning eventually said that she, you know, had some good feelings about what Ms. Burton
 
 or the community
 
 had done and I'm asking that she be excused.
 

 Id.
 
 at 860 (emphasis added). Defense counsel countered that juror 12's interactions with Burton were perfunctory-"simply [to] facilitate what the tribe has available, give him a bus ticket and bed date"-and did not give rise to any personal feeling whatsoever.
 
 Id.
 
 at 861.
 

 ¶ 95 The trial court stated that this was a "close case" but dismissed juror 12 because
 
 Burton
 
 was such an important witness.
 
 Id.
 
 Defense counsel then renewed her objection, pointing out that juror 12 appeared to be the only tribal citizen on the jury panel.
 
 Id.
 
 The court acknowledged that this was a concern
 but reasoned that "certainly it would be inappropriate for the Court to retain any juror because of their affiliation with the tribe or their ethnic status or similar qualities."
 
 Id.
 
 at 861-62.
 

 ¶ 96 The jury convicted Sassen Van Elsloo. He appealed, arguing among other things that juror 12 was improperly dismissed.
 
 State v. Sassen Vanelsloo
 
 , No. 72553-0-I, slip op. at 2-3,
 
 2017 WL 480712
 
 (Wash. Ct. App. Feb. 6, 2017) (unpublished), https://www.courts.wa.gov/opinions/pdf/725530.pdf. The Court of Appeals rejected that argument because juror 12 had admitted to positive feelings about "her tribe's support."
 
 Id.
 
 at 6. It reasoned that "[t]he trial court was in the best position to gauge juror 12's demeanor, facial expressions, and other nonverbal communications to assess whether she was biased."
 
 Id.
 

 ¶ 97 In his petition for review, Sassen Van Elsloo renewed his argument that juror 12 was improperly dismissed and pointed out that the trial court made no findings about her demeanor or other nonverbal cues. He contends that it is error under RCW 2.36.110, which governs juror dismissals at any time, and RCW 4.44.170(2), which describes "[p]articular causes of challenge" during voir dire, to. dismiss a juror who manifests no actual or implied bias. We granted review,
 
 State v. Sassen Vanelsloo,
 

 189 Wash.2d 1008
 
 ,
 
 403 P.3d 39
 
 (2017), and now reverse and remand for a new trial.
 

 ANALYSIS
 

 I. The trial court's dismissal of juror 12 violated the defendant's and the juror's constitutional rights
 

 A. There is no evidence that juror 12 was biased
 

 ¶ 98 The lead opinion concludes that there is no evidence that juror 12 was biased and that the remedy for improperly dismissing her is to reverse and remand for a new trial. I agree.
 

 ¶ 99 We review a trial court's decision to discharge a juror for abuse of discretion.
 
 State v. Depaz,
 

 165 Wash.2d 842
 
 , 858,
 
 204 P.3d 217
 
 (2009). "The range of discretionary choices is a question of law and the judge abuses his or her discretion if the discretionary decision is contrary to law."
 
 State v. Neal,
 

 144 Wash.2d 600
 
 , 609,
 
 30 P.3d 1255
 
 (2001) (citing
 
 State v. Williamson,
 

 100 Wash. App. 248
 
 , 257,
 
 996 P.2d 1097
 
 (2000) ).
 

 ¶ 100 RCW 2.36.110 and Criminal Rule (CrR) 6.5 govern discharge and excusal of impaneled jurors. CrR 6.5 broadly states that "[i]f at any time before submission of the case to the jury a juror is found
 
 unable
 
 to perform the duties the court shall order the juror discharged." (Emphasis added.) RCW 2.36.110 states:
 

 It shall be the duty of a judge to excuse from further jury service any juror, who in the opinion of the judge, has manifested unfitness as a juror by reason of
 
 bias, prejudice, indifference, inattention
 
 or any physical or mental defect or by reason of conduct or practices incompatible with proper and efficient jury service.
 

 (Emphasis added.) In other words, a juror cannot be dismissed just to be sure they don't lean too far toward believing one witness or another. A seated juror can be discharged or excused only for specific reasons like bias, prejudice, inability to perform, and the like.
 

 ¶ 101 The lead opinion is correct that chapter 2.36 RCW does not define the main term at issue here, "bias." Lead opinion at 814-16. In this case, however, it is unnecessary to determine the specific contours of the bias required for dismissal. The reason is that there is no indication that juror 12 harbored any bias at all.
 

 ¶ 102 The trial judge basically acknowledged this. She agreed with defense counsel's statement that "[juror 12] stated nothing about how she couldn't be fair or that she had any feeling one way or another" and concluded that juror 12 should instead be dismissed because the alibi witness was so important. 5 VRP (July 29, 2014) at 861.
 

 ¶ 103 Indeed, despite repeated questioning by the State, juror 12 clearly stated that she did
 
 not
 
 have positive feelings about alibi witness Burton. Instead, her brief prior interaction with Burton gave her only positive feelings for her tribe, the Lummi Nation:
 

 [STATE]: So did you have a positive experience with her?
 

 ....
 

 JUROR NO. 12: Do I believe she was a positive person for him? I can't say that because I think what was more positive for my nephew is when he finally went to treatment.
 

 ....
 

 [STATE]: I understand that, but it sounds like you kind of intellectualized it. I mean you're talking about, I mean you had a pretty good feeling, you must have a pretty good feeling about Ms. Burton and how she helped you; isn't that fair?
 

 JUROR NO. 12: I guess. It's not, I wouldn't call it from her. I'd call it from our own community for the help so that's what your tribe is for is to try to help the funds with our community people that need the assistance.
 

 Id.
 
 at 857-59. This record, as discussed by the lead opinion, shows that juror 12 was indifferent to Burton. Lead opinion at 816 ("Juror 12 made it clear that her interactions with Burton were neither positive nor negative, despite being asked four times by the prosecutor whether she had positive feelings toward Burton.").
 

 ¶ 104 As the lead opinion concludes, indifference toward a witness does not justify dismissal under the governing statute, RCW 2.36.110.
 
 Id.
 
 at 816. And a juror's mere acquaintance with a witness is not grounds for finding a juror unfit to serve.
 
 See
 

 State v. Tingdale,
 

 117 Wash.2d 595
 
 , 601,
 
 817 P.2d 850
 
 (1991) (citing
 
 Wise v. Commonwealth,
 

 230 Va. 322
 
 ,
 
 337 S.E.2d 715
 
 (1985) ).
 

 ¶ 105 The State implicitly acknowledged as much at trial. It moved for dismissal not because of evidence showing juror bias but because it "viewed Ms. Burton to be a very critical witness in this case. She is an alibi witness and, you know, if the jurors believe Ms. Burton then it's a big deal.... [I]f they believe her that means my case goes nowhere." 5 VRP (July 29, 2014) at 860. The State goes on to say that "whether I can absolutely put a finger on that she can't be fair or whether what she says is about, what she says about being fair or not I think that's kind of besides the point."
 

 Id.
 

 ¶ 106 Being fair, however, is not beside the point. The grounds for dismissal or excusal are unfitness, bias, and the like-matters that implicate a juror's ability and willingness to deliberate fairly and impartially. The State points to no evidence that juror 12 was unable to do that. It relies only on the assumption that juror 12 might be more favorable to the defense.
 

 ¶ 107 The trial court nevertheless granted the State's request for dismissal and did so for the reasons advanced by the State. It ruled not that juror 12 was biased but that alibi witness Burton was important: "[E]ven though there is not a real strong relationship between the juror and the witness[,] I think given the importance of the witness's role in the case it's appropriate for Juror 12 to be excused."
 

 Id.
 

 at 861
 
 .
 

 B. There was evidence only that juror 12 and the alibi witness shared an affiliation with the Lummi Nation
 

 ¶ 108 While the State and the trial court pointed to no evidence of actual bias, they did point to a different fact. The State argued that juror 12 would believe the defense alibi witness because of her positive feelings about her "community" or "tribe."
 

 Id.
 

 at 859
 
 .
 

 ¶ 109 Juror 12, however, repeatedly stated that her positive feelings were toward her tribal community, rather than Burton, for the assistance given to juror 12's nephew. In arguing for juror 12's dismissal, the State conflates the two, stating, "[Juror 12], through a lot of questioning eventually said that she, you know, had some good feelings about what Ms. Burton or the community had done and I'm asking that she be excused."
 

 Id.
 

 at 860
 
 . The State thereby suggests that juror 12 is biased due to a mutual affiliation with the Lummi Nation.
 

 ¶ 110 To be sure, the trial court found that the State did not engage in intentional discrimination.
 

 Id.
 

 at 862
 
 . But the record does show that the prosecutor made an assumption about juror 12's ability to discharge her civic duty based on her tribal affiliation. And the trial court dismissed juror 12 based on the same assumption that her tribal affiliation would cause her to view the facts favorably for the defense.
 

 C. Dismissal of a seated juror due to tribal affiliation is unconstitutional
 

 ¶ 111 It is impermissible to dismiss a seated juror based on her tribal affiliation or an assumption that her tribal affiliation would influence her view of a tribal affiliate's testimony that was favorable to the defense.
 

 ¶ 112 First of all, our cases hold that dismissing holdout deliberating jurors because of their view of the facts "risks violating the Sixth Amendment right to an impartial jury."
 
 State v. Elmore,
 

 155 Wash.2d 758
 
 , 772,
 
 123 P.3d 72
 
 (2005) (citing U.S. CONST. amend. VI ; WASH. CONST. art. I, § 22 );
 
 see also
 

 United States v. Symington,
 

 195 F.3d 1080
 
 , 1087 (9th Cir. 1999) ("[I]f the record evidence discloses any
 
 reasonable
 
 possibility that the impetus for a juror's dismissal stems from the juror's views on the merits of the case, the court must not dismiss the juror."). In this case, the trial court judge dismissed juror 12 because of vague concerns that the juror might believe the defense, without any evidence of bias. 5 VRP (July 29, 2014) at 861. Following the reasoning of
 
 Elmore,
 
 dismissal of seated jurors due to assumptions about how they view the facts is also improper.
 

 ¶ 113 But an additional concern here is the reason for the unsupported assumption that juror 12 would view witness Burton's alibi testimony too favorably. The reason was the juror's and the witness's common affiliation with the Lummi Nation. In other words, it was an assumption about the juror's fairness and fitness based on her Indian heritage. It is impermissible to make such unsupported assumptions about whether a person will fairly and impartially discharge their civic duty based on their status as an Indian.
 
 Cf.
 

 State v. Monday,
 

 171 Wash.2d 667
 
 , 678,
 
 257 P.3d 551
 
 (2011).
 

 ¶ 114 In the context of juror dismissal or excusal, it is also unconstitutional. As the United States Supreme Court has stated in a similar context, "Defendants are harmed, of course, when racial discrimination in jury selection compromises the right of trial by impartial jury, but racial minorities are harmed more generally, for prosecutors drawing racial lines in picking juries establish 'state-sponsored group stereotypes rooted in, and reflective of, historical prejudice.' "
 
 Miller-El v. Dretke,
 

 545 U.S. 231
 
 , 237-38,
 
 125 S.Ct. 2317
 
 ,
 
 162 L.Ed.2d 196
 
 (2005) (citation omitted) (quoting
 
 J.E.B. v. Alabama ex rel. T.B.,
 

 511 U.S. 127
 
 , 128,
 
 114 S.Ct. 1419
 
 ,
 
 128 L.Ed.2d 89
 
 (1994) and citing
 
 Strauder v. West Virginia,
 
 100 (10 Otto) U.S. 303, 308,
 
 25 L.Ed. 664
 
 (1880) ). The same is true of discrimination involving a seated juror. The "very integrity of the courts is jeopardized when a prosecutor's discrimination 'invites cynicism respecting the jury's neutrality,' and undermines public confidence in adjudication."
 
 Id.
 
 at 238,
 
 125 S.Ct. 2317
 
 (quoting
 
 Powers v. Ohio,
 

 499 U.S. 400
 
 , 412,
 
 111 S.Ct. 1364
 
 ,
 
 113 L.Ed.2d 411
 
 (1991) and citing
 
 Georgia v. McCollum,
 

 505 U.S. 42
 
 , 49,
 
 112 S.Ct. 2348
 
 ,
 
 120 L.Ed.2d 33
 
 (1992) ;
 
 Edmonson v. Leesville Concrete Co.,
 

 500 U.S. 614
 
 , 628,
 
 111 S.Ct. 2077
 
 ,
 
 114 L.Ed.2d 660
 
 (1991) ;
 
 Batson,
 

 476 U.S. at 87
 
 ,
 
 106 S.Ct. 1712
 
 ). Positive feelings about a community-in this case a tribal nation-without any proof of bias cannot be used as a reason for dismissing a seated juror.
 
 See
 
 RCW 2.36.110.
 

 ¶ 115 The trial court's decision to dismiss juror 12 violated the right to an impartial jury ( U.S. CONST. amend. VI ; WASH. CONST. art. I, § 22 ), the right to jury unanimity ( WASH. CONST. art. I, § 21 ), and the Fourteenth Amendment's equal protection clause ( U.S. CONST. amend. XIV ).
 

 D. The constitutional harmless error standard applies
 

 ¶ 116 "[M]ost constitutional errors can be harmless,"
 
 Arizona v. Fulminante,
 

 499 U.S. 279
 
 , 306,
 
 111 S.Ct. 1246
 
 ,
 
 113 L.Ed.2d 302
 
 (1991). But if a "trial error is of constitutional magnitude, prejudice is presumed and the State bears the burden of proving it was harmless beyond a reasonable doubt."
 
 State v. Coristine,
 

 177 Wash.2d 370
 
 , 380,
 
 300 P.3d 400
 
 (2013) (citing
 
 Chapman v. California,
 

 386 U.S. 18
 
 , 24,
 
 87 S.Ct. 824
 
 ,
 
 17 L.Ed.2d 705
 
 (1967) ;
 
 State v. Irby,
 

 170 Wash.2d 874
 
 , 886,
 
 246 P.3d 796
 
 (2011) );
 
 Monday,
 

 171 Wash.2d at 680
 
 ,
 
 257 P.3d 551
 
 .
 

 ¶ 117 The State makes no argument that this constitutional error was harmless. Under the
 
 Chapman
 
 standard, a new trial is required.
 

 Coristine,
 

 177 Wash.2d at 383
 
 ,
 
 300 P.3d 400
 
 .
 

 II. There was sufficient evident to support the firearm enhancement
 

 ¶ 118 The lead opinion states that although it need not reach the issue, the evidence was sufficient to support the firearm enhancement. Lead opinion at 823.
 

 ¶ 119 I agree that the evidence was sufficient. But I do not agree with the unsupported assertion that we need not reach that sufficiency of evidence issue. In fact, if the firearm enhancement is akin to a crime or an element, then we
 
 must
 
 reach that issue: reviewing courts are obligated to address insufficiency of the evidence claims concerning crimes or elements because insufficient evidence bars retrial.
 
 [3]
 
 On the other hand, if the firearm enhancement is not akin to a crime or an element, then we need not reach the issue because insufficient evidence would not bar retrial.
 

 ¶ 120 This court has not yet decided whether firearm enhancements fall into the former category or the latter one.
 
 [4]
 
 And the parties have not briefed that issue. Hence, I do not read the lead opinion's statement that it reaches this issue only to provide guidance as a holding on that point. I simply agree with the lead opinion's conclusion that the evidence in this case was sufficient. Lead opinion at 823-26.
 

 CONCLUSION
 

 ¶ 121 " 'Racial discrimination in selection of jurors harms not only the accused whose life or liberty they are summoned to try'; it also shamefully belittles minority jurors who report to serve their civic duty only to be turned away on account of their race."
 
 State v. Saintcalle,
 

 178 Wash.2d 34
 
 , 41,
 
 309 P.3d 326
 
 (2013) (plurality opinion) (quoting
 
 Batson
 
 ,
 
 476 U.S. at 87
 
 ,
 
 106 S.Ct. 1712
 
 ). The trial court's assumption that juror 12's ties to her tribal nation meant that she was biased were unfounded and unlawful. A juror cannot be dismissed simply because of tribal affiliation.
 

 ¶ 122 The trial court's decision to dismiss juror 12 was an error of constitutional magnitude. The State therefore bears the burden of proving that the error was harmless beyond a reasonable doubt, and it fails to carry that burden.
 

 ¶ 123 I agree with the lead opinion that we must reverse and remand for a new trial. I also agree that the State presented sufficient evidence to uphold the firearm enhancement.
 

 ¶ 124 I therefore respectfully concur.
 

 Fairhurst, C.J.
 

 González, J.
 

 Yu, J.
 

 STEPHENS, J. (dissenting in part/concurring in part)
 

 ¶ 125 I respectfully dissent in part.
 
 [1]
 
 Even accepting that the trial court abused its discretion in removing juror 12 from the panel, a new trial is not warranted on that basis. Adrian Sassen Van Elsloo has no constitutional right to a particular juror, and he made no objection to the jury panel that ultimately decided his case. Absent a showing of prejudice by Van Elsloo, his conviction must be affirmed. The lead opinion goes astray by shifting the burden to the State to establish harmless error, on the premise that the erroneous removal of an empaneled juror implicates the same constitutional interests as when a deliberating juror is removed for reasons that possibly stem from the juror's "views of the merits of the case." Lead opinion at 812. The two situations are, in fact, quite different. Courts properly inquire into juror bias during voir dire and when issues arise midtrial to make certain that potential
 and empaneled jurors can fairly and impartially decide the case. If jurors express "views of the merits of the case" before hearing all the evidence, they should not serve. Once jury deliberations commence, however, courts must proceed with caution because calls to remove a particular juror for misconduct might implicate the juror's views about the case based on the evidence, for example, if the juror seems to be a "holdout." Caution in removing a deliberating juror is thus necessary to safeguard the defendant's constitutional right to an impartial jury and to a unanimous verdict.
 

 ¶ 126 When questions of juror bias arise midtrial, as here, the trial court's decision whether to replace a juror with an alternate is governed by RCW 2.36.110 and CrR 6.5. The court exercises considerable discretion. While this discretion may be abused when a juror is removed without a sufficient showing of bias, the error should be treated the same as any erroneous dismissal of an empaneled juror, for example dismissal of the wrong alternate juror. In such instances, prejudice is not presumed but must be shown by the complaining party. Because Van Elsloo makes no attempt to demonstrate any prejudice, I would affirm the Court of Appeals and uphold his convictions.
 

 I. The Erroneous Dismissal of an Empaneled Juror Midtrial Does Not Warrant Reversal of a Conviction Absent a Showing of Prejudice
 

 ¶ 127 The lead opinion identifies the three phases of trial during which a trial court might need to consider excusing or dismissing a particular juror. The first is voir dire, a process designed to ensure the defendant's Sixth Amendment right to trial by a fair and impartial jury of his peers.
 
 State v. Phillips,
 

 65 Wash. 324
 
 , 327,
 
 118 P. 43
 
 (1911) ; U.S. CONST. amend VI. At the heart of voir dire is the examination of potential jurors for bias or prejudice.
 
 See
 
 RCW 4.44.170. The relevant inquiry considers whether the juror can set aside any preconceived notions and regard the case impartially.
 
 State v. Noltie,
 

 116 Wash.2d 831
 
 , 839,
 
 809 P.2d 190
 
 (1991). "If the challenge is sustained, the juror shall be dismissed from the case." RCW 4.44.240. "The law presumes that each juror sworn in a case is impartial and above legal exception, otherwise he would have been challenged for 'cause.' "
 
 State v. Persinger,
 

 62 Wash.2d 362
 
 , 366,
 
 382 P.2d 497
 
 (1963). "An accused cannot complain if he is tried by an impartial jury. He can demand nothing more."
 

 Id.
 

 ¶ 128 A bookend to this first phase of trial is the third phase of trial: jury deliberations. Deliberations commence only once the jury has heard all the evidence and received the trial court's instructions. Calls to remove a juror during this phase may implicate the defendant's rights to a fair trial before an impartial jury and to a unanimous verdict.
 
 State v. Elmore,
 

 155 Wash.2d 758
 
 , 781,
 
 123 P.3d 72
 
 (2005) ;
 
 State v. Ashcraft,
 

 71 Wash. App. 444
 
 , 463,
 
 859 P.2d 60
 
 (1993) ;
 
 State v. Depaz,
 

 165 Wash.2d 842
 
 , 855,
 
 204 P.3d 217
 
 (2009). This is so because "a deliberating juror must not be dismissed where there is any reasonable possibility that the impetus for dismissal is the juror's views of the sufficiency of the evidence."
 
 Elmore,
 

 155 Wash.2d at 761
 
 ,
 
 123 P.3d 72
 
 . The improper removal of a juror under this standard is an error of constitutional magnitude that is presumed prejudicial.
 
 Ashcraft,
 

 71 Wash. App. at 465
 
 ,
 
 859 P.2d 60
 
 . Accordingly, "the reviewing court examines the effect the error had on the defendant's trial according to the harmless error standard."
 

 Id.
 

 at 464 n.8,
 
 859 P.2d 60
 
 (citing
 
 Chapman v. California,
 

 386 U.S. 18
 
 ,
 
 87 S.Ct. 824
 
 ,
 
 17 L.Ed.2d 705
 
 (1967) ). Examples of constitutional violations occurring during jury deliberations include removing a "holdout" juror,
 
 Elmore,
 

 155 Wash.2d at 772
 
 ,
 
 123 P.3d 72
 
 , or failing to reinstruct a reconstituted jury on the record to begin deliberations anew,
 
 Ashcraft,
 

 71 Wash. App. at 464-65
 
 ,
 
 859 P.2d 60
 
 .
 

 ¶ 129 This case concerns the trial court's decision to remove a juror midtrial, after the jury is empaneled but before deliberations begin. The trial court has an ongoing obligation "to excuse any juror who is unfit and unable to perform the duties of a juror."
 
 State v. Jorden,
 

 103 Wash. App. 221
 
 , 227,
 
 11 P.3d 866
 
 (2000) (citing RCW 2.36.110 ;
 
 [2]
 

 CrR 6.5
 
 [3]
 
 ). The relevant inquiry considers whether the record demonstrates juror unfitness, whether by reason of misconduct, inattentiveness, bias, or prejudice.
 
 Jorden,
 

 103 Wash. App. at 229
 
 ,
 
 11 P.3d 866
 
 . The trial judge has considerable discretion to resolve claims of unfitness in a way that avoids creating prejudice against either party.
 

 Id.
 

 A reviewing court will not disturb the trial court's decision unless the complaining party shows both an abuse of discretion and resulting prejudice.
 
 State v. Williamson
 
 ,
 
 100 Wash. App. 248
 
 , 253,
 
 996 P.2d 1097
 
 (2000).
 

 ¶ 130 Generally, the removal of an empaneled juror and replacement with an alternative juror prior to the commencement of deliberations is not seen as prejudicial.
 
 Depaz,
 

 165 Wash.2d at 857
 
 ,
 
 204 P.3d 217
 
 ;
 
 Jorden,
 

 103 Wash. App. at 229
 
 ,
 
 11 P.3d 866
 
 . "A defendant has no right to be tried by a particular juror or by a particular jury."
 
 State v. Gentry,
 

 125 Wash.2d 570
 
 , 615,
 
 888 P.2d 1105
 
 (1995). If the reconstituted jury that ultimately decides the case is unobjectionable, the defendant is not entitled to reversal of the conviction.
 
 Id.
 
 at 615-16,
 
 888 P.2d 1105
 
 .
 

 ¶ 131 While the lead opinion acknowledges RCW 2.36.110, CrR 6.5, and our precedent, it refuses to require a showing of prejudice by Van Elsloo before reversing his conviction. Instead, the lead opinion presumes prejudice and places the burden on the State to show harmless error. As explained below, this new approach is unwarranted.
 

 II. The Lead Opinion Improperly Shifts the Defendant's Burden To Show Prejudice, Instead Requiring the State To Show Harmless Error
 

 ¶ 132 In presuming prejudice and burdening the State with showing harmlessness, the lead opinion reasons that the removal of juror 12 implicated Van Elsloo's Sixth Amendment rights to a fair trial and to a unanimous verdict in much the same way that removing a deliberating juror might. Thus, it holds that prejudice is presumed and the State bears the burden of showing that the removal of juror 12 was harmless error. This holding reflects a misunderstanding of our precedent and of the facts in this case. Moreover, the new rule the lead opinion announces relies on a decision from another jurisdiction that was not cited by the parties and rests on entirely different circumstances and procedural rules.
 

 ¶ 133 The lead opinion invokes the "reasonable possibility" standard of
 
 Elmore,
 
 which states that "where a deliberating juror is accused of refusing to follow the law, that juror cannot be dismissed when there is any reasonable possibility that his or her views stem from an evaluation of the sufficiency of the evidence." 155 Wash.2d at 778,
 
 123 P.3d 72
 
 . Recently, we have emphasized that "this standard is applicable only in the rare case where a juror is accused of engaging in nullification, refusing to deliberate, or refusing to follow the law."
 

 Id.
 
 ; see also
 

 Depaz,
 

 165 Wash.2d at 855
 
 ,
 
 204 P.3d 217
 
 (rejecting application of the "reasonable possibility" standard outside of the
 
 Elmore
 
 context (citing
 
 Elmore,
 

 155 Wash.2d at 774
 
 ,
 
 123 P.3d 72
 
 ) ). The concern is that claims of juror misconduct during deliberations might mask disagreements between the target juror and the rest of the panel, such that removal of the juror would violate the defendant's right to a unanimous decision.
 

 ¶ 134 There is an obvious difference between such claims of juror misconduct during deliberations and claims that a potential or empaneled juror is biased or prejudiced. The lead opinion appears to equate "bias" with the juror's "views of the merits of the case." Prior to the commencement of deliberations, the trial court has an ongoing obligation to assure that the jurors who ultimately decide the case can do so fairly and impartially. If they are biased or prejudiced-i.e., if they have preconceived "views of the merits of the case"-they should not serve. By equating
 impermissible juror bias with the protected views of a deliberating juror, the lead opinion completely undermines a central purpose of RCW 2.36.110 and CrR 6.5, to remove and replace biased jurors.
 

 ¶ 135 The lead opinion also misunderstands the facts of this case. It acknowledges that juror 12 was challenged after she indicated her past interactions with a key witness in the case. The question was whether her acquaintance with the witness would hinder her ability to be a fair and impartial juror. Under RCW 2.36.110 and CrR 6.5, if the answer to this question was yes, then the trial court unquestionably should have removed the juror. But, it appears the trial court answered no to the critical question of bias.
 
 See
 
 lead opinion at 816 ("The record indicates that juror 12 was dismissed because Burton was a critical witness for the defense, not because juror 12 displayed actual bias.");
 

 id.
 

 ("[T]he record contains no indication that juror 12 formed an opinion about Burton or that such opinion would prevent her from trying the case impartially. The record indicates that juror 12 was indifferent to Burton, not biased toward her.").
 
 [4]
 

 ¶ 136 The trial court's error was in removing the juror without sufficient cause-an error that does not suggest any improper incursion into jury deliberations or implicate Van Elsloo's constitutional rights.
 
 [5]
 
 This case is thus distinguishable from
 
 Elmore.
 
 The "reasonable possibility" standard has no place in this context.
 

 ¶ 137 In order to support its holding of presumed prejudice here, the lead opinion must merge
 
 State v. Irby,
 

 170 Wash.2d 874
 
 ,
 
 246 P.3d 796
 
 (2011) with
 
 Hinton v. United States
 
 ,
 
 979 A.2d 663
 
 (D.C. 2009) for the proposition that jurors are not fungible after voir dire because "[r]easonable and dispassionate minds may look at the same evidence and reach a different result."
 
 Irby,
 

 170 Wash.2d at 886-87
 
 ,
 
 246 P.3d 796
 
 ;
 
 see also
 

 Hinton,
 

 979 A.2d at 689
 
 ("Once they start hearing and considering the evidence, individual jurors may evaluate it differently, and they may no longer be viewed as fungible merely because they have passed muster in voir dire."); lead opinion at 821.
 
 Irby
 
 is distinguishable because it involved the trial court's error in conducting voir dire by e-mail without the defendant being present to offer input into the selection of jurors. In the context of this due process violation of the right to be present, the court observed that the defendant must be allowed to help select the particular jurors who constitute his jury.
 
 Id.
 
 at 885-87,
 
 246 P.3d 796
 
 . Our case lacks this constitutional defect, and the language in
 
 Irby
 
 should not be stretched beyond its context. To apply
 
 Irby
 
 to the present facts results in a holding that runs headlong into the recognized premise that "[a] defendant has no right to be tried by a particular juror or by a particular jury."
 
 Gentry,
 

 125 Wash.2d at 615
 
 ,
 
 888 P.2d 1105
 
 . The lead opinion's reliance on
 
 Phillips,
 
 a voir dire case applying the "demonstration of prejudice" standard, likewise is misplaced.
 
 See
 

 Phillips,
 

 65 Wash. at 327
 
 ,
 
 118 P. 43
 
 ("All the law requires is that a defendant shall be tried by a qualified and impartial jury of his peers. Such a jury was secured in this cause, and appellant has suffered no prejudice.").
 

 ¶ 138 The lead opinion's reliance on the District of Columbia Court of Appeals decision in
 
 Hinton
 
 is also unconvincing.
 
 Hinton
 
 involved the removal of a juror based on his conduct during trial, including submitting several questions to witnesses.
 
 979 A.2d at 668-69
 
 . The trial court stated its concern " 'that he's a strange person and that he won't be able to deliberate fairly because of his strangeness.' "
 
 Id
 
 at 669. Directly implicating concerns of juror unanimity, the court opined, " '[T]his is a hung jury waiting to happen because ... he doesn't think along the wavelength of normal functioning people in my view.' "
 

 Id.
 

 at 670
 
 (second alteration in original). The court appropriately reversed. Finding the trial court violated relevant court rules by removing the juror on this basis, the court observed that "such an error also may threaten the independence of the jury's decision-making from undue judicial influence and the defendant's basic rights to trial by jury and a unanimous verdict."
 

 Id.
 

 at 689
 
 . This concern is absent in our case. The sole concern was juror 12's acquaintance with a witness. And upon dismissing juror 12, the court said nothing that might have compromised the remaining jurors: they were simply advised that juror 12 had an unexpected connection with an unnamed witness in the case. An unobjectionable alternate juror was sworn in, and the trial continued. The lead opinion points to no incidence in the record where the court offered the remaining jurors any opinions on the credibility of witnesses, sufficiency of the evidence, or "views of the merits of the case." Nor does it reference in the record where juror 12 did so. The concerns that led the court in
 
 Hinton
 
 to presume prejudice are absent here.
 
 [6]
 

 ¶ 139 The handful of other courts to cite
 
 Hinton
 
 appear to limit it to its narrow facts. Although
 
 Hinton
 
 has been considered in federal courts, the Virgin Islands, and the District of Columbia, I could find only two other state decisions that consider it. A dissenting opinion in the Florida District Court of Appeal cited
 
 Hinton
 
 as applying a prophylactic rule to prevent a judge from influencing the jury after it begins to hear evidence.
 
 Nicholas v. State,
 

 47 So.3d 297
 
 , 312 (Fla. Dist. Ct. App. 2010) (Wallace, J., dissenting in part). However, the Florida court found no abuse of discretion when the trial court dismissed a juror for potentially concealing his relationships to a witness and defendant in a drug-trafficking trial, where the juror had purchased drugs from the witness.
 

 Id.
 

 at 302
 
 .
 

 ¶ 140 In
 
 Bruckshaw v. Frankford Hospital of Philadelphia,
 
 the Supreme Court of Pennsylvania included
 
 Hinton
 
 in a string cite in the course of ordering a new trial.
 
 619 Pa. 135
 
 ,
 
 58 A.3d 102
 
 (2012). There, a court clerk, without notice to the court or the parties, replaced a juror with an alternate juror without development in the record.
 

 Id.
 

 at 113
 
 . Under these irregular circumstances, prejudice was presumed by the court.
 

 Id.
 

 Our case lacks the egregious circumstances in these cases, as well as in
 
 Hinton.
 
 Perhaps this is why none of the parties in this case cite
 
 Hinton
 
 as either binding or persuasive authority. The lead opinion provides no compelling justification for embracing
 
 Hinton's
 
 rule of presumed prejudice in this case. Nor does it explain how we can do so without overruling our own precedent.
 

 ¶ 141 In contrast to
 
 Hinton,
 
 we have held that the constitutional right to an impartial jury is not violated when an empaneled juror is replaced by an alternate, so long as the defendant participated in the selection of both jurors and alternates, and the panel was accepted by the defendant.
 
 Gentry,
 

 125 Wash.2d at 616
 
 ,
 
 888 P.2d 1105
 
 . The defendant
 must show prejudice for any abuse of discretion involving removal of a juror in noncompliance with a procedural rule.
 

 Id.
 

 Here, the court removed juror 12 without the adherence to RCW 2.36.110 but without violating a constitutional right to an impartial jury or a unanimous verdict.
 

 Id.
 

 If the lead opinion wishes to overturn our precedents, including
 
 Gentry,
 
 it must provide a clear showing that the " 'established rule is incorrect and harmful.' "
 
 Lunsford v. Saberhagen Holdings, Inc.,
 

 166 Wash.2d 264
 
 , 280,
 
 208 P.3d 1092
 
 (2009) (internal quotation marks omitted) (quoting
 
 Riehl v. Foodmaker, Inc.,
 

 152 Wash.2d 138
 
 , 147,
 
 94 P.3d 930
 
 (2004) );
 

 id.
 

 ("Where we have expressed a clear rule of law ... we will not-and should not-overrule it sub silentio."). The lead opinion makes no attempt at such a showing.
 

 ¶ 142 We should adhere to our precedent and recognize that the erroneous removal of a juror under RCW 2.36.110 and CrR 6.5 is not reversible error absent a showing of prejudice. Because Van Elsloo fails to demonstrate any prejudice from the removal of juror 12,1 would affirm his conviction.
 

 Johnson, J.
 

 Owens, J.
 

 Madsen, J.
 

 The trial court believed that juror 12 is a Lummi citizen. 5 VRP (July 29, 2014) at 853, 859. Juror 12's statements indicate that this is correct.
 
 Id.
 
 at 858-59 ("I'd call it from our own community ... that's what your tribe is for to try to help the funds with our community people that need the assistance."). Witness Burton worked for the Lummi Nation as an inpatient coordinator and drug and alcohol counselor.
 
 Id.
 
 at 770. It is unknown if Burton is also a Lummi citizen.
 

 The lead opinion states that the defense did not raise a
 
 Batson
 
 objection to the seating of juror 12, lead opinion at 823 n.7, and so it will not address the question of discrimination against juror 12 for that reason. The lead opinion is correct that the defense did not raise a
 
 Batson
 
 challenge-i.e., a challenge to the initial decision about seating the juror due to race discrimination.
 
 Batson v. Kentucky,
 

 476 U.S. 79
 
 , 87,
 
 106 S.Ct. 1712
 
 ,
 
 90 L.Ed.2d 69
 
 (1986). But issues concerning race are not necessarily confined to the time of jury selection. They might arise during the course of the trial. Indeed, defense counsel raised the issue of juror 12's tribal affiliation when arguing against dismissal in the trial court. 5 VRP (July 29, 2014) at 861-62. And the trial court ruled on that issue.
 

 Id.
 

 Thus, the reasons for dismissing juror 12 certainly fall within the scope of the issues presented.
 
 See generally
 

 Clark County v. W. Wash. Growth Mgmt. Hr'gs Bd.,
 

 177 Wash.2d 136
 
 , 143-46,
 
 298 P.3d 704
 
 (2013).
 

 Lockhart v. Nelson,
 

 488 U.S. 33
 
 , 39,
 
 109 S.Ct. 285
 
 ,
 
 102 L.Ed.2d 265
 
 (1988) (citing
 
 Burks v. United States,
 

 437 U.S. 1
 
 , 18,
 
 98 S.Ct. 2141
 
 ,
 
 57 L.Ed.2d 1
 
 (1978) ;
 
 Greene v. Massey,
 

 437 U.S. 19
 
 , 24,
 
 98 S.Ct. 2151
 
 ,
 
 57 L.Ed.2d 15
 
 (1978) ;
 
 Hudson v. Louisiana,
 

 450 U.S. 40
 
 , 42-43,
 
 101 S.Ct. 970
 
 ,
 
 67 L.Ed.2d 30
 
 (1981) );
 
 State v. Anderson,
 

 96 Wash.2d 739
 
 , 742,
 
 638 P.2d 1205
 
 (1982).
 

 See
 

 State v. Allen,
 
 1 Wash. App. 2d 774, 781-82,
 
 407 P.3d 1166
 
 (2017) (disagreeing with the State's argument that Washington does not apply double jeopardy protections to aggravating factors in noncapital cases),
 
 review granted,
 

 190 Wash.2d 1007
 
 ,
 
 414 P.3d 575
 
 (2018).
 

 I concur in Part III of the lead opinion upholding imposition of the firearm enhancements.
 

 "It shall be the duty of a judge to excuse from further jury service any juror, who in the opinion of the judge, has manifested unfitness as a juror by reason of bias, prejudice, indifference, inattention or any physical or mental defect or by reason of conduct or practices incompatible with proper and efficient jury service." RCW 2.36.110.
 

 "If at any time before submission of the case to the jury a juror is found unable to perform the duties the court shall order the juror discharged, and the clerk shall draw the name of an alternate who shall take the juror's place on the jury." CrR 6.5.
 

 The record contains the following exchange indicating the trial court did not conclude that juror 12 was biased:
 

 MS. ANDERSON [Sassen Van Elsloo's counsel]: [S]he stated nothing about how she couldn't be fair or that she had any feeling one way or another.
 

 THE COURT: You know, that's true. It's a close case, but I think I'm going to rule that the juror should be let go. Counsel points out correctly that Ms. Burton is a critical witness and even though there is not a real strong relationship between the juror and the witness[,] I think given the importance of the witness's role in the case it's appropriate for Juror 12 to be excused.
 

 5 Verbatim Report of Proceedings (July 29, 2014) (VRP) at 861;
 
 see also
 
 Br. of Appellant at 24 ("Juror 12 made clear that her passing contact with Burton two years previously was neither a positive or negative experience. Juror 12 was indifferent towards Burton."); Br. of Resp't at 14 ("In this case, the trial court determined the juror at issue should be removed in an abundance of caution for bias but did not conclude whether the bias was implied based on the circumstances that presented or actual based on the jurors demeanor and responses to inquiries during the limited mid-trial examination had by the parties."); VRP at 860 (" 'Now, whether I can absolutely put a finger on that she can't be fair or whether what she says is about, what she says about being fair or not I think that's kind of beside[ ] the point.' " (quoting the prosecutor) ).
 

 I agree with the lead opinion that the record in this case does not support raising a
 
 Batson
 
 issue sua sponte.
 
 See
 
 lead opinion at 823 n.7;
 
 Batson v. Kentucky,
 

 476 U.S. 79
 
 ,
 
 106 S.Ct. 1712
 
 ,
 
 90 L.Ed.2d 69
 
 (1986).
 

 The source of the presumed prejudice rule in
 
 Hinton
 
 is also inapplicable here. The court in
 
 Hinton
 
 invoked the "grave doubt" standard applicable in federal cases when the court concludes that a nonconstitutional error had a substantial influence on the outcome of the case.
 
 979 A.2d at 690-91
 
 . In such cases, prejudice is presumed and "the government bears the 'burden of showing the absence of prejudice.' "
 

 Id.
 

 at 691
 
 (quoting
 
 United States v. Olano,
 

 507 U.S. 725
 
 , 741,
 
 113 S.Ct. 1770
 
 ,
 
 123 L.Ed.2d 508
 
 (1993) ). As noted, in this case, the trial court's nonconstitutional error merely involved insufficient findings to support removal of a juror under the governing statute and court rule.