**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

**FILE**

IN CLERK'S OFFICE
SUPREME COURT, STATE OF WASHINGTON
FEBRUARY 2, 2023

*González, C.J.*
CHIEF JUSTICE

THIS OPINION WAS FILED
FOR RECORD AT 8 A.M. ON
FEBRUARY 2, 2023

ERIN L. LENNON
SUPREME COURT CLERK

IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | |
| Petitioner, | ) | No. 100777-9 |
| | ) | |
| v. | ) | En Banc |
| | ) | |
| ATERE KEVEL NORMAN, | ) | |
| | ) | Filed: February 2, 2023 |
| Respondent. | ) | |
| | ) | |

OWENS, J.—During deliberations at Atere Norman's trial, juror 9 became overwhelmed and punched himself in the face. After several jurors expressed concern, the trial court questioned juror 9 and two other jurors before dismissing juror 9 for cause. The reconstituted jury found Norman guilty of one of two counts. The Court of Appeals reversed Norman's conviction, holding juror 9's dismissal was improper under the heightened evidentiary standard set forth in *State v. Elmore*, 155 Wn.2d 758, 123 P.3d 72 (2005). But the *Elmore* standard applies only where a juror is accused of nullification, refusing to follow the law, or refusing to deliberate. As there was no such accusation here, and the trial court found juror 9's conduct likely

affected the jury's process of deliberating freely, it did not abuse its discretion in dismissing juror 9. We therefore reverse the Court of Appeals and affirm Norman's conviction.

FACTS

Norman was tried before a jury on first degree burglary and second degree assault. The jury began deliberating at lunchtime. After only a few hours of deliberation, the jury pounded on the door and told court staff they were breaking for the evening. Over half of the jurors left the room before the court clerk arrived. The remaining jurors asked the clerk, "[W]hat do we do if we have a problem with one of our jurors?" 7 Verbatim Rep. of Proc. (VRP) at 552. The clerk told them to have the presiding juror speak with her privately the next morning.

Later that day, two other jurors contacted the clerk. Juror 11 "called to advise there was an incident in the jury room," and juror 2 left a message explaining that "juror Number 9 became overwhelmed and frustrated and started punching himself in the face and said that he has a problem with inflicting self-harm." *Id.* at 553. Juror 2 said, "[I]t was very scary and she didn't want to be sitting next to [juror 9] or really in the room with him." *Id.*

The next morning, the presiding juror told the clerk that "Juror Number 9 was accused of not being open-minded, then began—then he punched himself in the face twice and made several of the other jurors uncomfortable and . . . Juror Number 9 stated he has a problem with inflicting self-harm." *Id.* at 553-54.

2

*State v. Norman,* No. 100777-9

The court and counsel discussed these events outside of the presence of the jury. The prosecutor moved to excuse juror 9 for cause. *Id.* at 554. Concluding there were safety concerns, the trial court decided to voir dire several of the jurors, including juror 9. The court instructed each of them not to talk about the case or any factual discussions among the jurors. *Id.* at 555, 559, 562.

The court asked juror 9 "to tell us about anything unusual relating to your actions yesterday and your ability to perform your duties." *Id.* at 554-55. Juror 9 responded:

> So yesterday, discussions became very heated, and . . . there were a number of people who had disagreements with me. This caused raising of voices, and I became . . . somewhat overwhelmed. I felt somewhat like—a little bit attacked, and I reacted with an emotional outburst of punching myself in the face. That has happened in the past when I get into high-stress situations. I have self-harmed in the past, but it hasn't happened in a number of years. That being said, I still consider myself of sound mind and ability to continue going forward with this case.

*Id.* at 555.

The court asked whether juror 9 had ever turned that emotion on others to which he responded, "Outside of, like, junior high school brawls, no." *Id.* When the court asked whether juror 9 believed anyone would feel unsafe given his physical reaction, he said no, he had never been violent with another person. *Id.* at 556.

Juror 9 said he did not think the self-harm would happen again:

> I've tried to basically ready myself and steady myself. . . . [N]ow that I know that—how stressful the situation can get, I'm more prepared to handle and deal with it, and if I feel like it is getting to that point again, I

3

> will simply ask the jury for a break . . . and cool down so it doesn't occur again.

*Id.*

After the interview, the prosecutor again moved to excuse juror 9 for cause, arguing, "He acknowledged that he was . . . punching himself in the face, which obviously is going to cause fear and concern amongst other jurors who are basically locked in a small room with him. And I have great concern about the sanctity of the process of deliberations under these circumstances." *Id.* at 557. The defense disagreed, noting that juries often "get heated." *Id.* at 557-58.

The court then interviewed juror 2, who had left the message with the clerk. juror 2 was "fine to continue," but she did not "want the incident that happened yesterday to limit what people feel comfortable saying." *Id.* at 559. Juror 2 explained, "[I]t made me feel uncomfortable because I don't like seeing someone respond that way . . . I just don't want a repeat of what happened yesterday to occur again." *Id.*

When asked whether juror 9's conduct "might cause jurors not to speak their opinions," juror 2 said yes, "because nobody wants to see him do that again, and I think everybody is a little on edge." *Id.* at 560. Juror 2 said this would not hinder her ability to speak her mind, and she did not "think anybody is having any issue," but the jurors "just don't want to see him punch himself in the face again" and they were "more concerned with his behavior versus the nature of our conversations." *Id.* at

4

*State v. Norman,* No. 100777-9

560-61. She explained that upon arrival that morning, the jurors had "just kind of scan[ned] around" and were "not really sure what today is going to hold . . . in terms of [juror 9]'s behavior." *Id.* at 561.

The court moved on to question the presiding juror, juror 8. The following exchange took place:

> THE COURT: . . . [O]ur question to you is whether or not you believe the jury will be able to fully and fairly discuss these matters based on [juror 9's] incident and whether or not you have any concerns for his, your, or anyone else's safety and health.
>
> JUROR NO. 8: There was some disagreement. I don't think that there is any physical threat, but there was some . . . self physical punching of the face by Juror Number 9, and he stated that he had problems with self-harm growing up. Now, because of the disagreements, I'm not sure that that won't continue. I'm not sure that there will be a resolution. He was pretty adamant about his beliefs, so I don't know that we'll be able to come to an agreement. In fact, I don't think we will.
>
> THE COURT: Well, I don't want to hear about that. Sorry.
>
> JUROR NO. 8: Okay. Okay.
>
> THE COURT: What I want to know is whether there will be a full and fair discussion and without intimidation from anybody feeling—
>
> JUROR NO. 8: No.
>
> THE COURT: No.
>
> JUROR NO. 8: I don't think there will be.

*Id.* at 562-63.

5

*State v. Norman*, No. 100777-9

Counsel asked juror 8 to clarify whether he thought the jurors could openly discuss their views on the case. Juror 8 said yes and explained that he misunderstood the earlier question. He said juror 9 allowed others to have their opinions, "but oftentimes, he's interrupted during those opinions." *Id.* at 564. According to juror 8, juror 9 was "in control of himself" for "80 percent of the day," but in the remaining time he "punch[ed] himself in the face a couple times and grab[bed] his hair" in reaction to contentious discussions. *Id.* at 564-65. Juror 8 did not know if these reactions would continue, but he was willing to keep deliberating. *Id.* at 565-66.

The court did not interview anyone else. The prosecutor again moved to dismiss juror 9 for cause, arguing, "[H]e clearly was not in control of himself during 20 percent of the proceedings yesterday." *Id.* at 566. The defense objected, noting that "everyone is willing to move forward" and that juror 9 said he would try to keep himself in check. *Id.* at 567.

> The court ultimately ruled:
>
> I'm going to dismiss Juror Number 9. Twenty percent of the day, he was not in control of himself, and he apparently has a long history of self-harm when he's overwhelmed, highly stressed, and not in control of himself. And I don't doubt that he'll make his best efforts, but *being out of control and punching yourself in the face has to be intimidating on the process of discussing your views openly and freely*. . . .
>
> [Juror 2] . . . said that she—you know, felt bad that he was hitting himself in the face and didn't want him to do that, and I think that shows an inhibition at some level. . . . We'll call Juror 13 [(the alternate)].

*Id.* at 568 (emphasis added).

6

The jury began deliberating anew with the alternate juror. Norman was acquitted of burglary in the first degree and convicted of assault in the second degree. *Id.* at 573-76; Clerk's Papers (CP) at 205-06.

Norman appealed, arguing the trial court's dismissal of juror 9 violated his due process right to a fair and impartial jury. Applying the heightened *Elmore* standard, Division One of the Court of Appeals agreed and remanded for a new trial. *State v. Norman*, No. 83330-8-I, slip op. at 19 (Wash. Ct. App. Feb. 28, 2022) (unpublished) (citing *State v. Berniard*, 182 Wn. App. 106, 124, 327 P.3d 1290 (2014) (citing *Elmore*, 155 Wn.2d at 781)), https://www.courts.wa.gov/opinions/pdf/833308.pdf. It held that juror 9 was dismissed on grounds not supported by the record and that the heightened standard applied because there was a reasonable possibility that juror 9 had questioned the sufficiency of the State's evidence. *Id.* at 18-20.

The State petitioned for review, arguing the Court of Appeals' decision conflicts with *Elmore*, 155 Wn.2d 758. We granted review. *State v. Norman*, 199 Wn.2d 1021 (2022).

ISSUE

Did the trial court abuse its discretion in dismissing juror 9?

ANALYSIS

To resolve this case, we must first decide what evidentiary standard applies to a trial court's dismissal of a juror who engages in self-harm during deliberations. This

7

*State v. Norman*, No. 100777-9

is a legal question that we review de novo. *See Dep't of Lab. & Indus. v. Rowley*, 185 Wn.2d 186, 200-02, 378 P.3d 139 (2016).

Trial judges have a "'continuous obligation'" to excuse a juror who "has manifested unfitness . . . by reason of bias, prejudice, indifference, inattention or any physical or mental defect or by reason of conduct or practices incompatible with proper and efficient jury service." *Elmore*, 155 Wn.2d at 773; RCW 2.36.110. This obligation implicates a defendant's right to trial by an impartial jury, U.S. CONST. amend. VI; WASH. CONST. art. I, § 22, and their right to a unanimous jury verdict, *State v. Ortega-Martinez*, 124 Wn.2d 702, 707, 881 P.2d 231 (1994); *Ramos v. Louisiana*, 590 U.S. ___, 140 S. Ct. 1390, 1396-97, 206 L. Ed. 2d 583 (2020).

Special considerations apply where a juror is accused of nullification, defined as "a juror's 'knowing and deliberate rejection of the evidence or refusal to apply the law . . . because the result dictated by law is contrary to the [juror's] sense of justice, morality, or fairness.'" *Elmore*, 155 Wn.2d at 761 n.1 (alterations in original) (quoting BLACK'S LAW DICTIONARY 875 (8th ed. 2004)). Investigating those allegations necessarily requires some probing into the jury's deliberations, which risks violating the secrecy of deliberations and influencing the jury's verdict. *Id.* at 770-71; *State v. Depaz*, 165 Wn.2d 842, 855, 204 P.3d 217 (2009). Opening the deliberations to scrutiny can also chill debate and jeopardize the integrity of the process. *Elmore*, 155 Wn.2d at 771-72; *Depaz*, 165 Wn.2d at 855.

8

*State v. Norman,* No. 100777-9

To balance these competing interests, this court has applied a heightened evidentiary standard in some cases. We have concluded that "where a deliberating juror is accused of refusing to follow the law, that juror cannot be dismissed when there is any reasonable possibility that his or her views stem from an evaluation of the sufficiency of the evidence." *Elmore*, 155 Wn.2d at 778. The heightened standard applies "only in the rare case where a juror is accused of engaging in nullification, refusing to deliberate, or refusing to follow the law." *Id.*; *see also Depaz*, 165 Wn.2d at 855.

This heightened standard does not apply here. Juror 9 was not accused of nullification, refusing to deliberate, or refusing to follow the law. Nevertheless, the Court of Appeals applied the heightened standard, reasoning that "the trial court was aware that there was a reasonable possibility that the stress arose from the juror's views on the merits of the case" without addressing the initial inquiry. *Norman*, No. 83330-8-I, slip op. at 19.

In applying the heightened standard, the Court of Appeals relied on *Berniard*, 182 Wn. App. 106, and *State v. Johnson*, 125 Wn. App. 443, 105 P.3d 85 (2005). *Norman*, No. 83330-8-I, slip op. at 12-15. Its reliance on these cases is misplaced. In *Berniard*, the court dismissed a deliberating juror without properly investigating her distress, which likely stemmed from her known position as a holdout juror. 182 Wn. App. at 115, 123. Here, the court dismissed juror 9 after investigating his conduct, which he admitted was triggered by high-stress situations. There is no evidence of

9

*State v. Norman,* No. 100777-9

juror 9's views on the merits, nor is there evidence that his distress stemmed from anything other than interactions inherent to the deliberative process. *See State v. Lamar*, 180 Wn.2d 576, 583-85, 327 P.3d 46 (2014) (noting that arguments among jurors are an important aspect of the jury system). *Berniard* does not support the application of the heightened standard here.

In *Johnson*, a deliberating juror had been crying and occasionally ceased communicating with others. 125 Wn. App. at 451-52. The foreperson testified that the juror was "emotionally distraught" and that her condition was worsening. *Id.* at 458. The juror explained that she was upset because she took a different view of the jury instructions and other issues in the case. *Id.* at 451. Although the juror never said she was unable to continue deliberating, the trial court dismissed the juror based on the foreperson's testimony, finding her behavior incompatible with proper and efficient jury service. *Id.* at 451-52. The Court of Appeals reversed, holding that the juror disagreed with others in part due to her views on the merits, and the trial court improperly intruded into deliberations to make a credibility determination. *Id.* at 458. *Johnson* is not helpful here; the trial court did not know juror 9's views on the merits or otherwise find him less credible than others; it focused on whether the undisputed facts of his conduct warranted dismissal. *See* 7 VRP at 562-63, 568.

This court addressed whether the heightened standard applies to other types of juror misconduct in *Depaz*, 165 Wn.2d at 846, where a holdout juror discussed the case over the phone with her husband. The trial court excused the juror for lack of

10

*State v. Norman,* No. 100777-9

candor and because of third-party influence. *Id.* at 850-51. Depaz challenged that

decision, arguing the heightened standard applied. *Id.* at 853-54. We disagreed,

noting we "expressly reserved the 'reasonable possibility' standard for cases involving

accusations of nullification and refusing to deliberate or follow the law." *Id.* at 855

(citing *Elmore*, 155 Wn.2d at 774). In all other cases, the trial court has discretion to

dismiss a juror who it finds manifests unfitness. *Id.* at 856.

We reiterate that the heightened standard applies *only in the rare case* where a

juror is accused of nullification or refusing to deliberate. There is no evidence that

juror 9 rejected the evidence or refused to apply the law. Nor is there evidence juror 9

refused to deliberate; to the contrary, he explained that he felt "somewhat

overwhelmed" and a "little bit attacked" *during* deliberations. 7 VRP at 555. He

could not have felt this way if he was not deliberating. Juror 9 attributed his self-harm

to stressful situations, and the trial court's inquiries into the impetus for dismissal did

not implicate the "'quality and coherence of [juror 9's] views on the merits.'"

*Elmore*, 155 Wn.2d at 770 (quoting *United States v. Symington*, 195 F.3d 1080,

1087-88 n.6 (9th Cir. 1999)). We hold that under *Elmore* and *Depaz*, the heightened

standard does not apply.

Once we determine the applicable evidentiary standard, we review the trial

court's decision to excuse a juror for abuse of discretion. *Id.* at 777-78 (citing *United*

*States v. Abbell*, 271 F.3d 1286, 1302-03 (11th Cir. 2001)). A trial court abuses its

discretion if its decision is manifestly unreasonable, unsupported by the record, or

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

made by applying the wrong legal standard. *State v. Curry*, 191 Wn.2d 475, 483-84, 423 P.3d 179 (2018) (citing *State v. Madsen*, 168 Wn.2d 496, 504, 229 P.3d 714 (2010)).

In cases of juror misconduct, trial courts are accorded considerable deference because they are "'uniquely situated to make the credibility determinations that must be made . . . where a juror's motivations and intentions are at issue.'" *Elmore*, 155 Wn.2d at 778 (quoting *Abbell*, 271 F.3d at 1303). Trial courts can "gain a balanced picture of the situation" by questioning some or all of the jurors. *Id.* at 774. Here, the trial court did just that, focusing on juror 9's behavior and its effect on deliberations. The court dismissed juror 9, noting he was "not in control of himself" and his self-harm had to be "intimidating on the process of discussing your views openly and freely." 7 VRP at 568.

The State argues juror 9's actions rendered him unfit, highlighting that the jury was instructed to not let emotions overcome rational thought processes. Br. of Pet'r at 22-23. An otherwise competent juror is unfit if the judge finds they exhibit, among other things, "conduct or practices incompatible with proper and efficient jury service." RCW 2.36.110. The trial court did not explicitly find juror 9 unfit, but the record amply supports such a finding. Juror 9's emotions clearly overcame his rational thought processes and affected the jury's ability to discuss and deliberate. *See* CP at 181, 202. Moreover, his behavior impaired the presiding juror's ability to ensure that the jury discussed the issues "in an orderly and reasonable manner." CP at

*State v. Norman*, No. 100777-9

151. Juror 9's conduct was "incompatible with proper and efficient jury service" and he was therefore unfit pursuant to RCW 2.36.110.

Moreover, the trial court's finding that juror 9's conduct had to be "intimidating on the process of discussing" views openly and freely implicates Norman's constitutional right to a unanimous verdict. 7 VRP at 568.

Unanimity means the jury reaches a consensus after "after each juror examines the evidence and the parties' arguments about what the evidence means, in light of the jury instructions, and all of the jurors exchange their individual perceptions, experiences, and assessments." *Lamar*, 180 Wn.2d at 585. Jurors reach unanimity by comparing views and arguing amongst themselves, *id.* at 584, and must feel free to dissect the credibility and motivations of others, *United States v. Thomas*, 116 F.3d 606, 619 (2d Cir. 1997).

The trial court noted that juror 2 expressed "inhibition at some level." 7 VRP at 568. Juror 2 initially said she did not want to be in the same room as juror 9, then later indicated she was "fine" to deliberate but did not want juror 9's conduct "to limit what people feel comfortable saying." *Id.* at 559. Juror 2 thought that juror 9's self-harm might cause others not to speak their opinions, that the jury was "more concerned with his behavior versus the nature of our conversations," and that everyone was "on edge." *Id.* at 560-61.

The record shows that juror 9's conduct impaired the full and fair discussions necessary to reach a verdict. If jurors were concerned their opinions could prompt

13

*State v. Norman,* No. 100777-9

juror 9 to harm himself, they may have censored themselves. If jurors did not feel free to dissect the credibility and motivations of the witnesses and each other, their ability to reach a unanimous verdict would be compromised. The trial court acted within its discretion to remove a juror whose behavior may have impaired Norman's constitutional right to a unanimous verdict.

## CONCLUSION

We hold that the trial court did not abuse its discretion in removing juror 9, where his conduct could have impacted the jury's ability to reach a unanimous verdict. The heightened evidentiary standard does not apply to juror 9's dismissal because he was not accused of nullification, refusing to deliberate, or refusing to follow the law. We reverse the Court of Appeals, affirm Norman's conviction, and remand for any further proceedings necessary to carry out this decision.

*State v. Norman,* No. 100777-9

Owens, J.

WE CONCUR:

González, C.J.

Johnson, J.

Yu, J.

Madsen, J.

Montoya-Lewis, J.

Stephens, J.

Whitener, J.

*State v. Norman*, No. 100777-9
(Gordon McCloud, J., concurring)

No. 100777-9

GORDON McCLOUD, J. (concurring)—I agree with the majority's

conclusion, and I agree that its analysis accurately describes the language of our

cases, especially our language in *State v. Elmore*, 155 Wn.2d 758, 123 P.2d 72

(2005).

But some of *Elmore*'s language is potentially contradictory. On the one

hand, *Elmore* stated that a trial court can *never* dismiss a deliberating juror when

there is any "reasonable possibility" that the trial court ordered dismissal because

of the juror's views about the quality or sufficiency of the evidence. *Id*. at 772,

778. On the other hand, *Elmore* stated that this "reasonable possibility" standard

applies "*only* in the rare case where a juror is accused of engaging in nullification,

refusing to deliberate, or refusing to follow the law." *Id.* at 778 (emphasis added).

I write separately because I would acknowledge the tension between those

two statements. But I would resolve it as follows. Our decision in *Elmore* specified

that the heightened, "reasonable possibility" evidentiary standard must apply to

1

*State v. Norman*, No. 100777-9
(Gordon McCloud, J., concurring)

certain types of cases, specifically cases with accusations of juror nullification, because that's what *Elmore* was all about—a few jurors accused another juror of nullification, and the trial court, after limited inquiry, then dismissed the challenged juror because of that accusation. *Id.* at 764-66. Given those facts, our decision in *Elmore* necessarily focused on the juror nullification situation. We held that as a matter of law, juror nullification accusations *do* involve disputes over the quality and sufficiency of the evidence, so the heightened, "reasonable possibility" evidentiary standard must apply to those situations: "accusations that a juror intends to engage in nullification 'go to the quality and coherence of the juror's views on the merits.'" *Id.* at 770 (quoting *United States v. Symington*, 195 F.3d 1080, 1087 n.6 (9th Cir. 1999)).[1]

But juror nullification is not the only situation that implicates "the quality and coherence of the juror's views on the merits." Common sense tells us that there

---

[1] The *Elmore* court also relied on *Symington* for its apparent limitation of the "reasonable possibility" standard. 155 Wn.2d at 770. But *Symington* did not limit the "reasonable possibility" standard to jury nullification and refusal to deliberate cases. Instead, *Symington* applied this standard to cases where "the allegations go to the quality and coherence of the juror's views on the merits." 195 F.3d at 1087 n.6. And then the *Symington* court applied that standard in a nonnullification case. It ruled that the trial court erred in dismissing a juror accused of inability to comprehend case information, inability to remember previously discussed topics, and refusal to discuss her views with the other jurors because those accusations were based largely on other jurors' frustrations with that juror's opinion on the case itself. *Id.* at 1083, 1088.

2

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

are all sorts of cases with accusations of juror misconduct that might bear on the quality and coherence of the juror's view on the merits. Norman argues that his case is one of them.

I would resolve this tension by applying the *Elmore* heightened, "reasonable possibility" standard to all challenges to deliberating juror dismissals—because a trial court can never dismiss a juror *because of* that juror's views about the sufficiency of the evidence.

Applying that heightened standard in *Elmore*, this court reviewed a record showing that the challenged juror had strong views on the quality and sufficiency of the evidence in the case, no matter what language he used to express those views during deliberations. This court therefore ruled that there was a reasonable possibility that the trial court dismissed juror 8 because of his views on the quality and sufficiency of the evidence. We affirmed the appellate court's decision to reverse and remand for a new trial.

Applying that heightened standard to this case compels a very different conclusion. The record shows that the trial court dismissed deliberating juror 9 because he engaged in physical violence. *See* Clerk's Papers at 568 (trial court ruling to dismiss juror 9 because he was "out of control" and punched himself in the face); majority at 13 ("The record shows that juror 9's conduct impaired the

3

*State v. Norman*, No. 100777-9
(Gordon McCloud, J., concurring)

full and fair discussions necessary to reach a verdict."). It is irrelevant to me whether discussions about evidence triggered that physical violence. In fact, it is irrelevant to me what caused that violence—unless, of course, it was self-defense, defense of another, or something like that. Because the trigger for his unacceptable physical violence is largely irrelevant, there is no reasonable possibility that the trial court dismissed him *because of* his views about the sufficiency of the evidence.

This result is consistent with the result in *State v. Depaz*, 165 Wn.2d 842, 855, 204 P.3d 217 (2009), though not with all of its language. In *Depaz*, decided four years after *Elmore*, this court reaffirmed *Elmore*'s language about limiting the reasonable possibility standard to nullification and similar cases. We stated, "This court expressly reserved the 'reasonable possibility' standard for cases involving accusations of nullification and refusing to deliberate or follow the law. . . . As this case does not involve accusations that would necessarily require investigation into the jury's deliberations, we reject Depaz's argument in favor of applying the 'reasonable possibility' standard and review the trial court's decision under RCW 2.36.110." *Depaz*, 165 Wn.2d at 855 (footnote omitted). But even though we said that, what we actually did was affirm the juror's dismissal because the juror had consulted with her husband, a third party, not because of the underlying supposed

4

*State v. Norman*, No. 100777-9
(Gordon McCloud, J., concurring)

trigger that prompted her to violate the secrecy of the deliberations. In other words,

we silently answered the real *Elmore* question first: we concluded there was no

reasonable possibility that she was dismissed because of her views on the case; she

was dismissed because she breached the secrecy of the deliberations.

I think that courts should always answer the *Elmore* question—is there any

reasonable possibility that the trial court dismissed the juror because of the juror's

views of the quality or sufficiency of the evidence—explicitly, and they should

answer it first. If the answer is yes, then the trial court cannot dismiss the juror for

that reason. If the answer is no, then the trial court must proceed to exercise its

discretion under RCW 2.36.110, concerning juror removal due to unfitness to

serve. It seems like the more straightforward and simple way to proceed.

CONCLUSION

There is tension between *Elmore*'s statement that a trial court can never

dismiss a deliberating juror when there is any "reasonable possibility" that the trial

court ordered dismissal because of the juror's views about the quality or

sufficiency of the evidence, and its statement that this "reasonable possibility"

standard applies "only in the rare case . . . of . . . nullification, refusing to

deliberate, or refusing to follow the law." 155 Wn.2d at 772, 778. I would resolve

that tension differently than the majority does. Instead of creating two classes of

5

*State v. Norman*, No. 100777-9
(Gordon McCloud, J., concurring)

juror dismissal cases with different evidentiary standards, I would apply the reasonable possibility standard to all juror dismissal challenges. In other words, I would ask the *Elmore* question—is there "any reasonable possibility" that the reason for dismissal is "the juror's views of the sufficiency of the evidence"—in every case, first. *Id.* at 781.

In this case, the physical violence caused the dismissal, not whatever triggered that violence. As a result, there is no reasonable possibility that juror 9 was dismissed because of his views on the sufficiency of the evidence.

In this case, and in most cases, we also have to ask the next question: Did the trial court nevertheless abuse its discretion in dismissing juror 9 for any other reason? *Elmore*, 155 Wn.2d at 777-78. I agree with the majority that the trial court did not abuse its discretion—juror 9 was unfit because his actions were "incompatible with proper and efficient jury service." RCW 2.36.110; majority at 12-13.

I therefore respectfully concur.

Gordon McCloud, J.

6